## MERCHANTS' NATIONAL BANK *v.* COOK.

1. The court, upon consideration of the facts in this case, holds that it appears that an insolvent debtor transferred certain securities to his creditor with a view to give him a fraudulent preference, and that the latter received and appropriated them, having reasonable cause to believe that the debtor was insolvent.
2. The creditor is, therefore, liable to the assignee in bankruptcy of the debtor for the securities or for their value.
3. *Toof* v. *Martin*, 13 Wall. 40, *Buchanan* v. *Smith*, 16 id. 277, and *Wager* v. *Hall*, id. 584, cited and approved.

APPEAL from the Circuit Court of the United States for the Southern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. Stanley Matthews* for the appellant.

*Mr. Edgar M. Johnson*, contra.

MR. JUSTICE HUNT delivered the opinion of the court.

This action is brought by the assignees of B. Homans, Jr., to recover from the Merchants' Bank certain securities, or their value, received by the bank from Homans. The securities are alleged to have been received in violation of the thirty-fifth section of the Bankrupt Act. That Homans was insolvent when the securities were delivered is not denied, but the bank insists that it had no reasonable cause to believe that such was his condition.

On the morning of Aug. 25, 1869, the bank advanced to Homans, upon his check on New York, the sum of $10,000, less the usual charge of one-eighth of one per cent. In the afternoon of the same day, Homans became satisfied that his failure could no longer be averted, and that his check thus given would not be paid. He therefore placed in an envelope addressed to the bank the securities in question, with the following note: —

"HOMANS & CO., BANKERS, No. 23 W. THIRD ST.,
CINCINNATI, Aug. 25, 1869.

" D. I. FALLIS, Esq., *Pr.*

"DEAR SIR, — A disappointment gives us reason to fear that our check of this date may not be paid. I leave with you the enclosed as security.    B. HOMANS, Jr."

On the morning of the 26th, his banking-house was opened for business as usual, Homans himself being present.   At nine o'clock A.M. he left his office for Covington, where he lived, instructing Mr. Wood, one of his clerks, that if he did not return at ten o'clock to deliver the envelope addressed to the Merchants' Bank, and another of a like character to another bank.   Homans did not return that day ; but at ten or half-past ten o'clock, Mr. Albert, another clerk, received directions from him to close the doors, take no more deposits, and pay no more checks.   Mr. Albert immediately locked the doors, and, receiving the package from Mr. Wood, at once delivered it to the bank.   Upon these facts, with one exception as to time, the parties are agreed.

The president of the Merchants' Bank testifies that he found the envelope on his desk in the bank when he came to the bank at about eight o'clock in the morning, and is quite confident that it could not have been later than half-past eight when he became aware of its contents.   On the point of time he may easily have fallen into an error ; and, we think, there can be no doubt of his mistake.   Mr. Homans testifies that he left the banking-house at nine A.M. to go to Covington, and then gave instructions to Mr. Wood, a clerk, to deliver the envelope, if he did not return by ten o'clock.   Mr. Albert also testifies that the banking-office of Homans was opened at nine o'clock, and continued open for about an hour ; that he then received orders from Mr. Homans to close the doors ; that he did so, and, in pursuance of directions then received from Mr. Wood, proceeded to deliver this envelope, with a similar one to another bank ; and that this delivery was made at ten or half-past ten o'clock.

Mr. Yergason, the cashier of the Merchants' Bank, presented at Homans's office a clearing-house check, and payment thereof was refused.   Mr. Albert testifies that this check was presented and payment demanded by the cashier after the doors were closed and after the envelope had been delivered at the bank. Mr. Fallis testifies to the same purport, and that this demand and refusal was made between nine and ten o'clock in the morning,

That Homans intended to give the bank a preference over other creditors, — that is, that he expected and intended by

means of the enclosures sent that the bank should receive the full amount of its $10,000 check, while other creditors would receive but a portion of their debts, — is too evident to require discussion. Mr. Homans states in explicit terms that he was at that time aware of his inability to pay his creditors in full then or in the future.

The important question remains, Had the Merchants' Bank, when it received the packages, reasonable cause to believe that Homans was insolvent? If it had, the thirty-fifth section of the Bankrupt Act declares the transaction to be void. If it had not, it may lawfully hold the securities or their avails.

The president of the bank testifies that there was nothing in the note sent with the securities, or in the transaction itself, that led him to suspect the insolvency of Homans. While it is impossible certainly to indicate the operation of the human mind, we cannot but think the witness is again at fault in his recollection, and that his idea at the time of testifying was not the one that controlled his action when the occurrence took place.

1. The transaction, on the theory of the solvency of Homans, is quite inexplicable. It was the general practice of these parties, as of all bankers in their city, to deal in exchange on New York. The practice was thus: The Merchants' Bank wanted $10,000 to be used in the city of New York. Mr. Homans had the money there, which he did not need for his own purposes. The bank gives him $10,000 in currency, less the difference in exchange, and takes his check on his banker in New York for the sum named. This is the theory of the transaction. In fact, Homans had no funds in New York, but gave his check that he might obtain the currency to be used to meet pressing demands at home. The theory of the bank, however, was as is above stated.

That a banker in Cincinnati, having sold a sight-draft on New York, should the next day, without agreement or solicitation, send to the holder collaterals to secure the payment of the draft, would be an extraordinary transaction, and, in the language of Mr. Cook, president of the Fourth National Bank of Cincinnati, it would be a taint upon the standing of the drawer, and would at once impress one with the idea that the drawer

was insolvent, or in great financial difficulty.    Such is the evidence also of Mr. Griffiths and Mr. Espy, bankers of the same place.    The giving of security under such circumstances is in repugnance to the idea of the whole transaction, which is that of a quick and simple commercial exchange of funds.    One who lends money on bond or time notes may well expect and take security for their payment.    It is in harmony with the transaction.    But if a check is taken in payment of an account presented, no one would expect to receive collateral security for its payment.    It would not, however, be more incongruous, or more inharmonious, than the giving of collateral security for the payment of the draft in question.    The giving and acceptance of the collateral could have but one significance to the mind of a banker.

2. The letter accompanying the collaterals, we think, gave a notice which a business man could not misunderstand, especially in connection with the fact, known to the bank, that a short time prior thereto there were evidences that Homans was in need of money, and that there were clearing-house checks to a large amount outstanding against him.    The letter enclosed said : " A disappointment gives us reason to fear that our check of this date may not be paid.    I leave with you the enclosed as security."    Its language is expressive to a business man.    It means, not that we fear our check may not be paid, but that it will not be paid.    We are disappointed in obtaining the funds to pay it.

This disappointment is not the result of an accident or of a misunderstanding, for that apology would have been given if it existed ; nor is the disappointment a temporary one, for that would have been stated if true.    We do not expect to be able to pay it, and we enclose you securities, which will not indeed give the money to which you are entitled, but will protect you from ultimate loss.    This is what the letter means.    It is a statement of inability from want of funds to meet a current and most pressing debt, either in New York or in Cincinnati, the non-payment of which involved public suspension and bankruptcy.    Practically it was so understood, for we find —

3. That immediately upon its receipt the Merchants' Bank sent for payment its clearing-house check, previously unpre-

sented. The testimony of Mr. Albert shows that the Merchants' Bank was not in the habit itself of presenting clearing-house checks, but that, in about fifteen minutes after he had left the envelope and securities at the bank, Mr. Yergason, the cashier, in person presented the clearing-house check and requested its payment. The relation of cause and effect is a more rational explanation of this speedy demand than to suppose it to be a mere coincidence.

It is scarcely necessary to discuss the authorities as to the meaning of the words " having reasonable cause to believe the party to be insolvent." When the condition of a debtor's affairs are known to be such that prudent business men would conclude that he could not meet his obligations as they matured in the ordinary course of business, there is reasonable cause to believe him to be insolvent. Knowledge is not necessary, nor even a belief, but simply reasonable cause to believe. *Toof* v: *Martin*, 13 Wall. 40; *Buchanan* v. *Smith*, 16 id. 277; *Wager* v. *Hall*, id. 584.

There is nothing in the subsequent decisions of this court to vary these principles, and it is not worth while to go through the English cases founded upon a statute containing different language from our own.

Upon the whole case, we are all of the opinion that the court below decided correctly in holding that Homans was insolvent; that the securities were transferred with a view to give a fraudulent preference; and that the bank had reasonable cause to believe that Homans was insolvent when it received and appropriated the securities presented to it.

*Decree affirmed.*