S H O E M A K E R v. NATIONAL UNION BANK. See Case No. 12,801.

SHOEMAKER (UNITED STATES v.). See Case No. 16,279.

---

## Case No. 12,802.

### In re SHOENBERGER.

[4 Ciu. Law Bul. 965.]

District Court, S. D. Ohio. 1879.

BANKRUPTCY—INSOLVENCY—ILLEGAL PREFERENCE —KNOWLEDGE OF CREDITOR.

1. A merchant for whose accommodation a note was given and indorsed by him, is within the definition of the supreme court of insolvency.

2. The knowledge, by the creditor to whom such note was indorsed, that the condition of his affairs was such that he could not pay such debts as they matured is reasonable cause to believe him insolvent.

3. Securities and payments received by the creditor under such circumstances, are in contravention of the bankrupt law.

4. Where the creditors, without actual fraud, received as security a nonforfeitable policy of insurance and afterwards paid installments of premiums thereon. such entitles him to a pro rata value of the policy.

[In the matter of Joseph Shoenberger, a bankrupt.]

. The question in this case now before the court arises upon exceptions to the report of Register Ball, upon an application of the assignee to expunge the proof of debt with security by the Western German Bank.

Wulsin & Worthington, for assignee.
Long, Kramer & Kramer, for German American Bank.

SWING, District Judge. On the 25th day of November, A. D. 1875, J. K. Skaats executed ,and delivered his promissory note to Joseph Shoenberger for $2,116$\frac{22}{100}$, payable four months after the date thereof, at the Western·German Bank. This ·note was indorsed by Shoenberger to the bank. The proof shows that the note was made for the accommodation of Shoenberger, and that he agreed with Skaats to take care of it. The note was not paid at maturity, and upon the day of·its maturity, after having been returned.to the bank from the clearing house, and after banking hours, a member of the banking house notified Shoenberger that the note had not been paid, and requested him to waive demand, notice and protest, which was done by Shoenberger. He also demanded of Shoenberger security for the payment of the note, which Shoenberger agreed to give, and on the next day Shoenberger assigned to him the chattel mortgage and policy of insurance in contest in this case, and afterwards, on the 5th day of April, A. D. 1876, he paid upon this note $450. The bank, after the transfer of the policy of insurance, paid three installments of the premiums of $250 each. The policy of insurance is nonforfeitable. The register finds that at the time of the transfer of the mortgage and policy and the payment of the money Shoenberger was insolvent, and that the bank had reasonable cause to believe him insolvent, and directs the payment to the assignee of the money received upon the mortgage and that which was paid by Shoenberger, and that the reassignment of the policy of insurance, but holds that the bank having paid three installments, and Shoenberger four installments, of the premiums for the insurance, that it shall hold three-sevenths of the value of the policy, and to this finding of the register the bank has excepted.

Upon these exceptions the question presented is, was Shoenberger, at the date of these transfers, insolvent? And had the bank reasonable cause to believe that he was insolvent? The proof in the case shows that Shoenberger was in fact at the date of the transfers largely insolvent, but the proof does not show that the bank knew that such was his condition. So that the question becomes one as to how far in law the bank is to be held to have had reasonable cause to believe him insolvent.

What insolvency of a trader or merchant is under the bankrupt law is well settled by the supreme court of the United States, it

is defined to be, "when a trader or merchant whose business affairs are in such a condition as that he is unable to pay his debts as they become due in the ordinary course of his business, as men in trade usually do, he is insolvent." Toof v. Martin, 13 Wall. [80 U. S.] 40; Buchannan v. Smith, 16 Wall. [83 U. S.] 277; Wager v. Hall, Id. 584. It is very clear that such was the condition of Shoenberger not only on the 5th of April, but on the 29th day of March, 1876. He was not only therefore insolvent in fact, but was clearly within the legal definition of insolvency.

The next question to be determined is, had the bank reasonable cause to believe that Shoenberger was insolvent? The supreme court of the United States has also defined what shall constitute reasonable cause to believe a party is insolvent, and it is that when the condition of a debtor's affairs are known to be such that prudent business men would conclude that he could not meet his obligations as they matured in the ordinary course of his business there is reasonable cause to believe him insolvent. Merchants' Nat. Bank v. Cook, 95 U. S. 342.

The evidence in the case shows that on the day of the maturity of the note that one member of the bank called upon Shoenberger after banking hours, when the note had been dishonored, and requested of him security for its payment, he does not say he demanded payment of him, but it is very certain that on that day his affairs were not in such a condition as that he could meet the obligation, nor were they in such condition the next day, and that fact must have been known to the bank, else why was it not met, and why the demand and acceptance of security for its payment?

But it is said that in this case that Shoenberger was the indorser only of this note, that he was not the debtor in the sense in which that term is used by the supreme court, and that therefore the rule which we have stated cannot apply. I think this distinction cannot be maintained. Whilst it is true that he was the indorser, it is nevertheless true that he was the debtor of the bank, and under the laws of Ohio he could have been sued without joining the maker, and the entire debt could have in the first instance been collected from him; and indeed in this case it seems as if the bank did look to him alone for the payment thereof. They never called upon the maker for payment, but procured from the indorser a waiver of demand for payment. I think therefore that this case does not come within the rule laid down by the supreme court.

That Shoenberger was insolvent in fact and in law when this transfer was made and when the money was paid. That they were made by him when he could not secure or pay all his creditors, or could have reasonably hoped to have done so. That their effect was to give a preference to the bank, and

that under such circumstances the law presumes that such was his intent in making them. That the bank had reasonable cause to believe him insolvent in law, and that they must be charged in law with the knowledge that such transfer and payment was intended to be in fraud of the bankrupt laws. The bank will therefore be required to surrender the preference thus obtained by paying to the assignee the amount realized from the foreclosure of the mortgage, to transfer the policy of insurance to the assignee, and to pay him the sum of $450 with interest from the date of its receipt.

There is more difficulty in regard to the payment of the installments by the bank, upon the policy of insurance. It has been held that where a preference was taken in fraud of the bankrupt laws that the parties receiving it would not be allowed for the payments of liens or charges upon it, but there does not seem to have been in this case any actual intention of fraud upon the part of the bank, or upon the part of Shoenberger, and the rule would be a severe one. But the policy in this case was non-forfeitable, and the bank was under no obligations to pay these installments. It was not necessary to preserve its life. It must therefore be held to have made them at its own risk. But it should be entitled to have whatever interest accrued by reason of such payments. The bank having paid three installments, and Shoenberger four, the bank will be entitled to three-sevenths of the value of the policy, and the assignee to four-sevenths of such value.