### In re GOODHILE.

(District Court, N. D. Iowa, C. D. May 23, 1904.)

No. 472.

1. BANKRUPTCY—PROVABLE CLAIMS—SURRENDER OF PREFERENCE.

Under the provisions of Bankr. Act July 1, 1898, c. 541, § 1, cl. 15, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], that "a person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property * * * shall not, at a fair valuation, be sufficient in amount to pay his debts," the fact alone that the indebtedness of a retail merchant to a wholesale house is past due when a payment is made thereon does not give the creditor reasonable cause to believe the debtor to be insolvent, and that it was intended to give a preference, so as to render the payment a voidable preference, which, if made within four months of bankruptcy, is required by section 57g, as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 799 [U. S. Comp. St. Supp. 1903, p. 415], to be surrendered by the creditor before proving his claim.

In Bankruptcy. On petitions for review of decision of referee allowing the claim of Henry Goodhile against the bankrupt's estate, and rejecting that of Wyman, Partridge & Co.

Deacon & Good, for Wyman, Partridge & Co. and other creditors.

Cliggett, Rule & Keeler and Hurd, Lenehan & Kiesel, for Henry Goodhile.

REED, District Judge. Warfield-Pratt-Howell Company and other creditors of the bankrupt filed objections to the claim of Henry Goodhile for $1,149.55 against the bankrupt's estate, which objections were overruled by the referee, and the claim allowed. Henry Goodhile filed objections to the claim of Wyman, Partridge & Co. for $884 and interest, which objections were sustained, and the claim rejected. Exceptions were saved by the respective parties, and petitions filed by them for review of the decision of the referee.

The testimony wholly fails to sustain the objections to the claim of Henry Goodhile. It amply supports the findings of the referee, and his order allowing the same is approved.

The objection of Henry Goodhile to the claim of Wyman, Partridge & Co. is based upon the ground that within four months prior to the bankruptcy the bankrupt paid to Wyman, Partridge & Co. certain sums of money on her indebtedness to them, which payments were received by said company with reasonable cause to believe that a preference was intended thereby. The referee finds that the bankrupt did pay Wyman, Partridge & Co. $100 within such four months; that the bankrupt was then insolvent; that Wyman, Partridge & Co., had reasonable cause to believe that she was; and that a preference was thereby intended; and held that the claim of such company should not be allowed, because it had not surrendered such preference. In his record of such finding, the referee recites:

"In my opinion, at the time such payment was made the petitioner [the bankrupt] was insolvent; that the owners of this claim were in a position, by reason of the same being past due, to know that the bankrupt was in an insolvent condition. I therefore find that such payment was a preference, and that claimants were not entitled to share in the assets of said estate."

It thus appears that the finding of the referee that Wyman, Partridge & Co. "had reason to know that the bankrupt was in an insolvent condition" is based upon the fact that the debt was past due at the time of such payment. The testimony shows that most of the debt owing by the bankrupt to said company was past due at the time of the payment, and that the company was urging her to pay, and that she was promising to pay as fast as she could; but there is no other evidence to show that the company had knowledge or reasonable cause to believe that she was insolvent when such payments were made.

As originally enacted, the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) provides as follows:

"Section 57g (30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]). Claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences."

"Section 60a (30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]). A person shall be deemed to have given a preference, if being insolvent, he has * * * made a transfer of any of his property and the effect of the enforcement of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debts than any other of such creditors of the same class."

In Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, it was held by the Supreme Court that under these sections a creditor who receives payments from his insolvent debtor within four months prior to the filing of the petition to be adjudged bankrupt is not entitled to prove his claim against the bankrupt's estate, without surrendering such preferences, even though he did not know or have reasonable cause to believe at the time of such payments that his debtor was then insolvent.

By the amendment of February 5, 1903, section 57g (32 Stat. 799, c. 487 [U. S. Comp. St. Supp. 1903, p. 415]) is made to read as follows:

"Sec. 57g. Claims of creditors who have received preferences voidable under section 60b * * * shall not be allowed unless such creditors shall surrender such preferences."

"Section 60b [U. S. Comp. St. Supp. 1903, p. 416]. If a bankrupt shall have given a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was in-

tended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person.   *   *   *"

Since this amendment, in order to deprive the creditor of the right to prove his claim against the bankrupt's estate, it must appear that he received from the debtor a payment with reasonable cause to believe that a preference was intended thereby.   What then is meant by the words "reasonable cause to believe a preference was intended"?

In Merchants' Bank v. Cook, 95 U. S. 342, 24 L. Ed. 412, the Supreme Court, in speaking of the meaning of the words "having reasonable cause to believe the party to be insolvent," said:

"When the condition of a debtor's affairs is known to be such that a prudent business man would conclude that he could not meet his obligations as they matured in the ordinary course of business, there is reasonable cause to believe him to be insolvent."

This was under the bankruptcy act of 1867, which defines "insolvency" to be "inability to meet one's obligations as they become due in the ordinary course of business."   Under the present bankruptcy law it is provided that:

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property   *   *   *   shall not, at a fair valuation, be sufficient in amount to pay his debts."

Under the present law, this decision of the Supreme Court would require that the condition of the debtor's affairs "must be known to be such that prudent business men would conclude that the aggregate of the debtor's property, at a fair valuation, was not sufficient to pay his debts," before there is reasonable cause to believe that the debtor is insolvent, and that a preference would therefore be the result of a payment while in such condition.   Has it been shown that Wyman, Partridge & Co. knew of any such condition of this bankrupt's affairs at the time this payment was made?   From the testimony it appears that Mrs Goodhile, the bankrupt, was engaged in the mercantile business at Manly, Worth county, Iowa; that Wyman, Partridge & Co. were wholesale dealers doing business at Minneapolis, Minn., with whom and other wholesale houses the bankrupt was dealing.   In the winter of 1902-1903 she remitted to Wyman, Partridge & Co., as payment on her account with them, a check and drafts, at the dates and in the amounts as follows: December 2, 1902, check for $100; January 6, 1903, bank draft for $100; January —, 1903, bank draft for $38.   The check of December 2d was her individual check on the local bank at Manly, which was sent by mail to Wyman, Partridge & Co., at Minneapolis, the day it was made.   This check was paid by the local bank, and afterwards returned to the bankrupt.   The draft of January 6th was purchased by her from the bank, and paid for in money, as was also the draft for $38, and each was sent by mail to the company on the day of its purchase.   From the certificate and record of the referee, it appears that it was the payment of December 2, 1902, by the bankrupt's check, which he finds was received by Wyman, Partridge & Co., with reasonable cause "to know that the bankrupt was in an insolvent condition.   In such certificate the referee says:

"The evidence shows that the claimant received payment of $100 within four months prior to the adjudication of the bankrupt;   *   *   *   that, at the

time claimant received such payment, the bankrupt was insolvent and claimant's account was past due, and that the check which was given then, and was afterwards cashed, was made payable at a date several days in the future from the time when such check was actually delivered to the claimant. I find said payment was made within four months prior to the adjudication of the bankrupt, and the claimant had reason to know that the bankrupt was in an insolvent condition."

The only testimony upon which such finding is based is that of the bankrupt. After testifying to payments to other creditors, she said:

"I remember paying Wyman, Partridge & Co. on their claim. December 2, 1902, I paid $100; January 6, 1903, $100; and in January, $38. Q. How did you make these payments? A. I gave a check for $100 December 2. I gave a draft for $100 January 6th, and draft for $38 some time in January. I got the drafts at the bank, and sent them by mail. * * * Q. What did you do with the $100 check you issued December 2, 1902? A. I sent it to them by mail. I think I did not get a receipt for it, but got the check back when it was paid. Q. Whom did you receive that check from? A. Manly Bank. I inclosed it in a letter to Wyman, Partridge & Co., and it was afterwards charged to my account at the bank and returned to me. I had been dealing with them for some time. Q. Was any of their creditmen to see you before these payments were made? A. No; but a short time after—some time in January—the creditman was there. Q. At the time these payments were made, was your account past due? A. Most of it was. They had not drawn on me, but had threatened to do so; and we told them we were doing all we could, and would pay them as soon as we could. Q. On this check to Wyman, Partridge & Co. are these words: 'Pay when dated.' Was that on there when the check was sent in? A. Yes; and the check was sent to them the same day it was dated. Some of the other checks to other parties were dated ahead, but this was sent the day it was dated. The drafts for $100 and $38 I bought at the bank, and paid for with money."

This is all of the testimony with regard to the payments to Wyman, Partridge & Co., and of their knowledge of the financial condition of the bankrupt. The check of December 2d is not returned with the testimony, but Mrs. Goodhile testifies that it was not dated ahead. It may be conceded that Mrs. Goodhile was insolvent when this check was made and sent to the company also when the drafts were sent in January; but there is no testimony from which it can be found that Wyman, Partridge & Co. had reasonable cause to believe her to be so at the time either of these payments was received from her. She was then conducting her business in the usual way, so far as the testimony shows, and these payments were made apparently in the ordinary course of business. No agent of the company had called upon her until after the second payment was made. On August 25, 1902, she made a written statement to this company, as a basis for credit, showing her assets to be $8,125, and her liabilities $891, and net worth $7,234, less whatever sum she was owing to this company. It is true that most of the bankrupt's account with Wyman, Partridge & Co. was past due at the time of these payments, and that the company was urging payment, but that is not sufficient to charge it with reasonable cause to believe that she was insolvent. Neither is the fact that the check was dated ahead, if that were true; and, under the testimony submitted, it was not. Such facts would only show that the debtor was unable to meet payments promptly, and that is not insolvency, under the present bankruptcy law. The burden is upon the objecting creditors or the trustee to prove that Wyman, Partridge & Co. had reasonable cause to believe that the bankrupt was

insolvent when these payments were made. This they have failed to do. No doubt, they were desirous of obtaining what was due them, and they may have had suspicions that she was embarrassed or might be insolvent, but that is not enough.

In Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971, the Supreme Court, in speaking of the meaning of the phrase, "have reasonable cause to believe such person is insolvent," says:

"It is not enough that some creditor has some cause to suspect the insolvency of his debtor, but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it; and yet such belief as the act requires may be wanting. Obtaining additional security or receiving payment of a debt under such circumstances is not prohibited by law. Receiving payment is put in the same category in the section referred to as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their insolvency were sufficient for the purpose."

In Stucky v. Masonic Savings Bank, 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640, the same rule is announced, and, in speaking of Grant v. Bank, above, it is said:

"That case established the doctrine that a creditor dealing with a debtor whom he may suspect to be in insolvent circumstances, but of which he has not sufficient evidence, may receive payments without violating the bankruptcy law. He may be unwilling to trust him further; he may be anxious about his claim, and desire to secure it; but such belief as the act requires may be wanting. Additional security and receiving payments under such circumstances are not prohibited by law."

There are no facts shown in the present case from which it can be found that Wyman, Partridge & Co., at the time such payments were made, had reasonable cause to believe that Mrs. Goodhile was insolvent, or intended a preference by the payments she made to it. It follows, therefore, that its claim should not have been rejected, and the referee is directed to allow such claim against the bankrupt's estate.