CRANDALL v. COATS et al.

(District Court, N. D. Iowa, C. D. January 7, 1905.)

No. 816.

1. BANKRUPTCY—PREFERENCE—INSOLVENCY—EVIDENCE.

In an action by a bankrupt's trustee to recover an alleged preference, evidence *held* to establish that the bankrupt was insolvent at the time the conveyance constituting the alleged preference was made.

2. SAME—CREDITORS—SURETIES.

Defendants, who were sureties on various obligations of a bankrupt, held a meeting with him, at which it was agreed that he should convey certain real estate to them at a certain price, in consideration of which they agreed to pay the indebtedness on which they were liable as sureties, and assume liens against the property. This agreement was carried out; the sureties executing new obligations to the creditors, as principals, and surrendering the old notes, etc., to the bankrupt. *Held*, that such sureties were creditors of the bankrupt, and that the conveyance constituted a preference, within Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418].

3. SAME—INSOLVENCY—NOTICE.

In an action by a trustee in bankruptcy to recover an alleged preference, evidence *held* sufficient to charge the preferred creditors with notice of the bankrupt's insolvency at the time the conveyance was executed.

4. SAME—LIENS—PAYMENT—REIMBURSEMENT.

Where certain of a bankrupt's creditors, who had been given a voidable preference, by a conveyance of real estate, which was set aside, paid certain incumbrances thereon, they were entitled to be reimbursed, to the extent of such payment, from the proceeds of the property.

In Equity. Suit in equity by a trustee in bankruptcy to recover from defendants a preference alleged to have been given them by the bankrupt. Submitted on final hearing.

C. B. Reinhart was adjudged bankrupt by this court August 25, 1903, upon a creditors' petition filed against him July 7th, previous, and the complainant has been duly appointed trustee of his estate. June 8, 1903, the bankrupt conveyed to the defendants a parcel of real estate, the brick store building thereon, and the fixtures and iron safe in said building, in the village of Farnhamville, Calhoun county, Iowa, for the agreed price of $5,000. The bankrupt was a merchant, and also did some business as a private banker. The complainant alleges that this property was so conveyed by Reinhart to the defendants while he was insolvent, in payment of debts owing by him to them, with intent to prefer them over his other creditors, and that defendants, when such conveyance was made, had reasonable cause to believe that such preference was intended thereby; and he seeks to recover such property from the defendants because of such preference. The defendants admit that the property was conveyed to them by Reinhart at the time and, as alleged by complainant, but deny (1) that Reinhart was insolvent at the time of such conveyance; (2) that they were his creditors at such time; and (3) that they either knew or had reasonable cause to believe that a preference was intended by such conveyance.

Dunshee & Dorn, Boardman, Aldrich & Lawrence, and Frick & Crandall, for complainant.

Kenyon & O'Connor and M. R. McCrary, for defendants.

REED, District Judge. 1. The defendants admit that the bankrupt was insolvent July 7, 1903, when the petition in bankruptcy was filed against him. Without reviewing the testimony in detail, it must suffice

to say that a careful consideration of it shows that on June 8th, preceding, his assets and liabilities were substantially as follows:

### Liabilities.

| | |
|---|---|
| Mercantile debts, more than | $ 5,600 |
| Debts paid by the property conveyed to defendants, at least | 5,000 |
| | $10,600 |

Whether or not this includes about $130 of taxes owing by him is not certain. If it does not, then this amount should be added.

### Assets.

| | |
|---|---|
| Building lot and safe conveyed to defendants, at the highest value fixed by any of the witnesses | $5,000 |
| Stock of merchandise, appraised by the appraisers in bankruptcy | 2,067 |
| Accounts collected by the trustee | 130 |
| | $7,197 |

The trustee, after diligent effort, was unable to sell the goods for more than $1,200, and that is the amount he realized therefrom. He knows of no other property of the bankrupt, and none had come to his custody. The value of the building and lot, as fixed by the several witnesses, does not exceed $4,500. Upon a fair estimate of values, the liabilities of the bankrupt on June 8, 1903, exceeded the fair value of his property, including that conveyed to the defendants, by about $4,500. That Reinhart was insolvent on June 8, 1903, admits of no doubt under the evidence.

2. The contention of the defendants that they were not creditors of the bankrupt at the time the property was conveyed to them is based upon the following named facts: Prior to June 6th the bankrupt had borrowed money from different persons, and given his promissory notes therefor, which were indorsed or signed by some of the defendants, at his request, as sureties for him. He was also liable as principal upon a guardian's bond, upon which he was indebted, as then estimated, at about $350, and which bond the defendant Coats had signed as surety for him. The largest of the notes signed or indorsed by any of the defendants was for $1,500, dated May 20, 1903. The other notes and guardian's bond had been made before. The property was incumbered by a mortgage and some judgment liens. Early in June, 1903, some of the defendants had negotiations with Reinhart about buying the building and lot, and he then told them he would have to sell the property in order to pay his debts. June 6th all of the defendants and Reinhart met at the building in Farnhamville, and it was finally arranged that Reinhart would convey the property to them for $5,000, and, if the defendants would take up the notes or pay the indebtedness which they had indorsed or become liable for as surety for him, such indebtedness might be turned in as a part of the purchase price of the property. In pursuance of this arrangement, the parties again met on Monday June 8, 1903, and Reinhart conveyed the property to the defendants, and they assumed the mortgage and judgment liens thereon, and turned over to Reinhart the notes which the defendants had respectively indorsed or signed as sureties for him. In addition to this, Coats turned in a certificate or other evidence of money which he had previously deposited

with Reinhart as a banker. The amount due from Reinhart as guardian, upon whose bond Coats was surety, as above stated, was also turned in. The different amounts making up the $5,000 as the consideration of the conveyance for the property are as follows:

Note to Kruckman, signed by the defendants Coats and Schneider, as
sureties ......................................................... $1,500
Note to Gross, signed by the defendant Schneider as surety............ 500
Note to Campbell, signed by the defendant Kent as surety............ 600
Due from Reinhart as guardian—Coats surety—estimated............ 350
Mortgage upon the building........................................ 1,500
Judgment liens, about............................................. 140
Bank deposit owing by Reinhart to Coats........................... 320
                                                              _____
                                                               $4,910

Interest upon these different amounts made up the $5,000 which was the consideration paid for the building.

It is contended on behalf of defendants that, as they were only sureties or indorsers for Reinhart at the time of this transaction, they were not his creditors, within the meaning of the bankruptcy law, and cannot, therefore, be held to have received a preference by the transfer to them of this property; that it is only creditors who can receive a preference under the bankruptcy law. This question must be considered as settled, so far as this court is concerned, against the contention of the defendants, by the decision of the Court of Appeals of this Circuit in Swarts v. Siegel, 117 Fed. 13, 54 C. C. A. 399. It is there held, upon full consideration, that one who signs or indorses as surety for another is a creditor of such other, within the meaning of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], and, as such, may be held to have received a preference from the principal debtor in the event of the bankruptcy of such debtor, and the existence of the other conditions which are declared by the act to constitute a preference. See, also, Livingstone v. Heineman, 120 Fed. 787, 57 C. C. A. 154. But if this were not so held, the evidence in this case clearly shows that these defendants on June 6, 1903, took up, from the creditors holding them, each of the notes which they had signed as sureties for the bankrupt, by giving their own notes to such creditors in lieu of the Reinhart notes, each of which new notes was signed by all the defendants as principals. By so paying or assuming the debt of Reinhart, for which he was contingently liable to them as his sureties, they became the principal creditors of Reinhart on June 6, 1903, and his notes which they had taken up and then held against him were turned over to Reinhart on June 8th as payment pro tanto for the property conveyed by him to these defendants on that date. The amount due from Reinhart upon the guardian's bond had not been paid at the time of this transaction, but it has since been paid by Mr. Coats; and it was agreed between the defendants and Reinhart that this amount should be paid as a part of the purchase price of the building and the $320 bank deposit, or loan whichever it may be called, was a direct indebtedness from the bankrupt to the defendant Coats. The conclusion is unavoidable, upon either view of the case, that each of the defendants was a creditor of Reinhart at the time this property was conveyed by him to them in payment of such indebtedness.

3. Did the defendants have reasonable cause to believe that a preference was intended by the conveyance of this property to them? It may be conceded that mere suspicion of a creditor that his debtor is insolvent is not sufficient to avoid a payment, or transfer of property as such, by the debtor to the creditor. In re Goodhile (D. C.) 130 Fed. 471, and cases cited. The property conveyed to these defendants was practically all of the bankrupt's property, except his stock of merchandise, which was appraised, as we have seen, at $2,067. A day or so after this transaction Reinhart went to Wisconsin, and, after the petition in bankruptcy was filed, his family followed him, and he has never returned to Farnhamville. The defendants were all near neighbors of the bankrupt, were upon friendly terms with him, and the defendant Coats had previously loaned him money from time to time, and all had indorsed his paper or signed as surety for him to others at different times, as above stated. The last of such paper was dated May 20, 1903, and is the $1,500 note to Kruckman, signed by Coats and Schneider as sureties. About the time this note was given, or shortly after, the bankrupt began to offer the building for sale, and the defendants began to talk with him about buying it. In regard to one or more of these conversations the bankrupt says:

"Now, the way we came to make the bargain was— One Sunday we were sitting there in the store, and we made the bargain, but we didn't make the papers. Q. Who first proposed the sale and purchase on that Sunday? A. Well, we always kind of hung together on Sunday. The way it come about— I had been figuring with Kruckman to sell to him, and he tried to make arrangements. * * * So those fellows and I was kind of joking, and they made me an offer, and that is the way we made the deal. I told them I wanted to sell, because I was hard up and needed the money; that bills were coming due, and I could make no collections, and had to sell. Q. What did you tell them? A. I told them, if I could sell the property and get some money of my brother, it would let me out, if good times would set in. About May 20, 1903, I gave a note to Kruckman for $1,500, with Coats and Kent [Schneider] as sureties. It seems to me it was to run a shorter time than a year. I can't say whether it was due when I made the sale, or not. It was agreed between us when we made the deal that they should take out of the purchase price the amount represented by the notes of $1,500, $600, and $500, and when we made the deal they were taken out.

"Cross-examination: I didn't allow those notes which Coats, Kent, and Schneider indorsed for me to be taken out of the proceeds of the sale with any intention of making them preferred creditors. I didn't intend to discontinue business. I intended to pay all of my creditors."

None of the defendants deny that Reinhart told them his financial condition as testified to by the latter. In addition to this, Mr. McCrary, who acted for the defendants in examining the title to the property and drawing the deed, and who was present when the deal was closed, testified that at such time—

"I mentioned the bankruptcy law, and one of them spoke up and said that he always did a cash business, and he didn't think there was any danger. I told them about the Bowen case."

The information so imparted to these defendants cannot be regarded as mere suspicion. It was direct and positive that Mr. Reinhart was hard up, and could not pay his debts unless he could sell his property, borrow some money, and good times would set in. These are facts sufficient to put any prudent person upon inquiry as to the financial

condition of Mr. Reinhart; yet these defendants all say they made no inquiry of him as to what other property he had, how much or to whom he was owing, what for, or when it was due; neither did they make, or have made, any examination of his books, to ascertain such condition. Had they so inquired of Mr. Reinhart, or made investigation of his books or otherwise, which was clearly suggested by the information they had, there can be no doubt that they would have discovered that he was hopelessly insolvent. They were required to exercise ordinary prudence to investigate and ascertain whether or not Mr. Reinhart was solvent, and could convey this property to them in satisfaction or payment of his debts without violating the bankruptcy law. Having failed to investigate when so put upon inquiry, they are chargeable with all the knowledge it is reasonable to suppose they would have acquired if they had performed their duty in this respect. All of these parties must be held to have intended the necessary consequences of their acts— the bankrupt to give and the defendants to receive the preference which the conveyance of this property constituted. Such is the rule many times declared by the Supreme Court. In Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481, it is said:

"It is the general principle that every one must be presumed to intend the necessary consequences of his acts. The transfer in any case by a debtor of a large portion of his property, while he is insolvent, to one creditor, without making provision for an equal distribution of its proceeds to all his creditors, necessarily operates as a preference to him, and must be taken as conclusive evidence that a preference was intended, unless the debtor can show that he was at the time ignorant of his insolvency. and that his affairs were such that he could reasonably expect to pay all his debts. The burden of proof is upon him in such case, and not upon the assignee or contestant in bankruptcy. * * * The statute, to defeat the conveyances, does not require that the creditors should have had absolute knowledge on the point, or even that they should, in fact, have had any belief on the subject. It only requires that they should have had reasonable cause to believe that such was the fact. And reasonable cause they must be considered to have had, when such a state of facts was brought to their notice in respect to the affairs and pecuniary conditions of the bankrupts as would have led prudent business men to the conclusion that they could not meet their obligations as they matured in the ordinary course of business."

In Buchanan v. Smith, 16 Wall. 277, 21 L. Ed. 280, the court says:

"But if it appears that the debtor giving the preference, whether a merchant or trading company, was actually insolvent, and that the means of knowledge upon the subject were at hand, and that such facts and circumstances were known to the creditors securing the preference as clearly ought to have put him, as a prudent man, upon inquiry, it would seem to be a just rule of law to hold that he had reasonable cause to believe that the debtor was insolvent, if it appears that he might have ascertained the fact by reasonable inquiry. Ordinary prudence is required of a creditor under such circumstances, and, if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge it is reasonable to suppose he would have acquired if he had performed his duty."

Wager v. Hall, 16 Wall. 584, 21 L. Ed. 504; Dutcher v. Wright, 94 U. S. 553, 24 L. Ed. 130, and Bank v. Cook, 95 U. S. 343, 24 L. Ed. 412, are to the same effect.

It is plain, under the evidence, that these defendants either knew that Reinhart was insolvent at the time of this transaction, or that they purposely refrained from inquiring or investigating as to his financial con-

dition to avoid such knowledge, and that they took the conveyance of this property with the specific intent of securing for themselves a preference over the mercantile creditors of this bankrupt. The transaction is clearly within the provisions of the bankruptcy law, and cannot be sustained.

The evidence shows that the property was conveyed to the defendants in equal shares, and that they were to pay a mortgage of $1,500, and other liens then upon the property, all of which were existing liens more than four months prior to the filing of the petition in bankruptcy. If the defendants have paid these liens, or any of them, the property has been relieved thereof to the extent of such payment, and the defendants should be reimbursed by the trustee from the proceeds of the property the amount so paid by them, with interest. The amounts received by the defendants as preferences by reason of the conveyance are:

The amount of the Kruckman note...................... $1,500 and interest
The amount of Gross note............................. 500 and interest
The amount of the Campbell note........................ 600 and interest
The amount of the bank debt owing to Coats............ 320
The amount due on guardian's note, estimated.......... 350

The remainder of the $5,000 paid or assumed by the defendants was prior liens upon the property. The conveyance to the defendants will therefore be set aside, and from the proceeds arising from the sale of the property the trustee will pay to the defendants such amount of prior liens upon the property as have been paid by the defendants.

Ordered accordingly.