### In re OPPENHEIMER.

(District Court, N. D. Iowa, Cedar Rapids Division. August 31, 1905.)

#### No. 468.

1. BANKRUPTCY—PREFERENCES—EFFECT ON ALLOWANCE OF CLAIM.

   Under the rule that a creditor who has received a merely voidable preference and retained the same in good faith until the recovery of a judgment therefor in a suit by the trustee of the bankrupt debtor does not thereby lose his right to then surrender the preference and prove his claim, on a finding by a referee on the hearing of objections to a claim that the creditor has received a voidable preference, he should fix a reasonable time within which the creditor may surrender the preference and have his claim allowed.

2. SAME—EVIDENCE CONSIDERED.

   Evidence considered, and held insufficient to show that payments made by a bankrupt to relatives within four months prior to his bankruptcy were received by the creditors with knowledge or reasonable cause to believe that the debtor was insolvent, or intended thereby to give preferences,

so as to render the same voidable under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445] as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 790 [U. S. Comp. St. Supp. 1903, p. 416], or prevent the proving of the balance due on their claims.

In Bankruptcy. On the several petitions of Minnie Oppenheimer, Isadore Weil, and Carrie Lemile, for review of the orders of the referee disallowing their respective claims against the bankrupt estate.

The petition in bankruptcy was filed July 11, 1904, and the adjudication was July 15th, following. July 26, 1904, the petitioners filed their respective claims duly verified against the estate as follows:

Isadore Weil: Balance due upon a promissory note dated January 12, 1903, due on demand, for $1,000. Indorsed as follows: March 26, 1904, merchandise, $47.97; March 4, 1904, cash, $100. Prior indorsements reduce claim to $889.05.

Minnie Oppenheimer: Balance upon note dated July 7, 1902, due on demand, for $5,000. Indorsed as follows: March 14, 1904, cash, $100; March 12, 1904, cash, $27.47; March 18, 1904, merchandise, $13.32. Prior indorsements reduce the claim to $2,352.17.

Carrie Lemile: Balance upon note dated June 12, 1903, due on demand, for $875. Indorsed as follows: March 19, 1904, cash, $100. Prior indorsements reduce the claim to $746.75.

To these respective claims the First National Bank of Iowa Falls and E. S. Elsworth, creditors of the bankrupt, and the trustee in bankruptcy, filed objections to their allowance upon the ground that each of the claimants, within the four months immediately preceding the filing of the petition in bankruptcy, had received payments from the bankrupt, which in fact were preferences under the bankruptcy act, which they had not surrendered; the payments referred to being the indorsements upon the notes as above stated. The referee found from the evidence that, when each of the payments was made, the bankrupt was insolvent, that by the payments he intended to prefer each of the petitioners to the amount thereof, and that each of the petitioners had reasonable cause to believe the bankrupt to be insolvent and that a preference was intended by such payments at the time they received the same; and he rejected the claims because such preferences had not been surrendered.

The petitioners are respectively the brother-in-law and sisters of the bankrupt, and resided in Mobile, Ala., when the above-mentioned payments were made to them, and the bankrupt at the time resided in Iowa Falls, this state, where he was engaged in the mercantile business. The petitioners respectively petition for a review of the orders of the referee denying their claims.

Huff & Huff, for petitioners.
Albrook & Lundy, for trustee and objecting creditors.

REED, District Judge. The referee found that each of the petitioners, within the four months immediately preceding the filing of the petition in bankruptcy, had received from the bankrupt a preference voidable under the bankruptcy act, which had not been surrendered by them to the bankrupt estate, and upon this ground rejected their respective claims. In the recent case of Keppel v. Tiffin Sav. Bank, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 790, the Supreme Court held that a creditor who has received from his bankrupt debtor a merely voidable preference, and who has in good faith retained the same until deprived thereof by a judgment of the court upon a suit brought by the trustee, may thereafter surrender the preference and prove his claim against the bankrupt estate. The petitioners, therefore, have not lost their right to prove their claims

by submitting to the judgment of the court the question of the validity of these alleged preferences. The referee, on finding that the payments were in fact voidable preferences, because made within the four months immediately preceding the filing of the petition in bankruptcy, should have fixed a reasonable time within which the petitioners might surrender the preferences and have their claims allowed, and, if the preferences were not so surrendered, then reject the claims, as provided by Bankr. Act July 1, 1898, c. 541, § 57g, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]. It was error, therefore, to reject the claims without giving the petitioners an opportunity to surrender the preferences, if in fact the payments are such.

Counsel for petitioners contend that the evidence wholly fails to show (1) that the bankrupt was insolvent at the time the payments were made; (2) that he intended a preference in making such payments; and (3) that either of the petitioners had reasonable cause to believe that a preference was intended by the payments made to them respectively.

The adjudication of bankruptcy is conclusive that the bankrupt was insolvent at the time of the filing of the petition, and the evidence is ample to sustain the finding of the referee that he had been so for at least four months prior thereto, and that he intended to prefer the petitioners by the payments he made to them. The only question to be determined, therefore, is, did the petitioners have reasonable cause to believe that a preference was intended when these payments were made to them? The question as to when payments are and are not voidable preferences under the present bankruptcy act was considered in Re Goodhile (D. C.) 130 Fed. 471, and Crandall v. Coats et al. (D. C.) 133 Fed. 965, and what is there said regarding this need not be restated here.

The principal, if not the only, facts relied upon to establish that these petitioners had reasonable cause to believe that a preference was intended by the respective payments to them, are that some time prior to March preceding the filing of the petition the bankrupt wrote to the petitioners, asking if they could use or would take some merchandise from his store in part payment of the notes he was owing them. They answered that they would, and sent lists of goods they would take, and the bankrupt sent them the goods and charged the amount to the respective petitioners upon his books, and the amounts were indorsed upon the notes by the petitioners and are the indorsements of merchandise appearing thereon. In January, 1904, the bankrupt arranged with the petitioner Minnie Oppenheimer to let her have a house and lot in Hutchinson, Minn., which had formerly been his homestead, at the agreed price of $2,000, to apply upon her note. After making the deed the bankrupt caused it to be recorded in the proper county before sending it to his sister.

The only thing claimed as unusual or out of the ordinary in these transactions is that the petitioners lived in Mobile, Ala., about 1,000 miles from Iowa Falls, where the bankrupt lived when the merchandise was sent, and that the deed was recorded before it was sent to his sister, and that merchandise in small amounts to apply

on the notes had been sent to them before by the bankrupt. At most this would only suggest that the bankrupt was short of ready money, and desired to make payments in that way as far as he could, instead of in money; but inability to pay one's debts in the ordinary course of business is not insolvency under the present law, and, if the petitioners knew or had reason to believe this, that is not sufficient to charge them with knowledge, or with reasonable cause to believe, that the bankrupt was insolvent. None of the petitioners had been in Iowa Falls since the bankrupt moved there (the last of 1901 or early in 1902), except Mrs. Lemile, and it does not appear that they knew of his financial condition, except as he informed them, and he testifies that he did not inform them of his embarrassment at or prior to the time that these payments were made. Mrs. Lemile was in Iowa Falls in December, 1902, and at that time was in his store, but the bankrupt was not then in embarrassed circumstances, though it is true that trade had been dull that season because of the failure of crops in the vicinity; but nothing is shown that would indicate that he was then insolvent, or that Mrs. Lemile had any reason to believe him to be. If these petitioners were not near relatives of the bankrupt, it would hardly be contended under the evidence that they knew such facts as would charge them with knowledge of, or put them upon inquiry as to, the bankrupt's insolvency at the time of any of these or the prior payments were made. While the transactions between them should be closely scrutinized, they are not forbidden by law to deal with each other, and there is not sufficient in the evidence to impugn the good faith of any of the petitioners in their dealings with the bankrupt.

An unfavorable inference is urged against the petitioners, because they have not testified in their own behalf as regards their knowledge of the bankrupt's condition. The good faith of the indebtedness of the bankrupt to each of them is not questioned. The amount of merchandise transferred to each is small, not more than they might reasonably need for their ordinary use. Their indebtedness is evidenced by the notes of the bankrupt, and they are not called upon to explain the matter of these payments until some facts are brought to their knowledge that would put them, as reasonably prudent persons, upon inquiry as to the bankrupt's financial condition. This was not done. It is not claimed that there was anything unusual or out of the ordinary in making the cash payments upon these notes. In fact, the bankrupt testifies that at the time of these payments, both of cash and merchandise, he was making payments to many others of his creditors, and had practically paid a large part of his mercantile indebtedness. To hold that these petitioners are chargeable with reasonable cause to believe that the bankrupt was insolvent and intended a preference to them by these payments, within the meaning of the bankruptcy act, would be to do so upon mere conjecture.

The order of the referee rejecting each of the claims is reversed, and he will allow the same against the bankrupt estate in the several amounts claimed. It is ordered accordingly.