## PRATT v. COLUMBIA BANK.

### (District Court, S. D. New York. March, 1907.)

BANKRUPTCY—VOIDABLE PREFERENCE—REASONABLE CAUSE TO BELIEVE PREFERENCE WAS INTENDED.

Defendant bank held two notes of the bankrupt given for borrowed money, both of which were paid a few days before the bankruptcy and when the bankrupt was insolvent. The bank learned that an account which the bankrupt had assigned as security for one of the notes was fictitious; that his place of business was closed; and by rumor, if not as a fact, that he had absconded, and then placed the notes in the hands of its attorneys for collection, although they were not due. It had also refused to accept payment of one of the notes alone demanding payment in full. Its attorneys knew who the attorneys for the debtor were, and through them obtained payment. They also knew at the time that a petition in bankruptcy had been filed against the debtor. *Held*, that defendant had reasonable cause to believe that a preference was intended by such payment, and that it constituted a voidable preference recoverable by the bankrupt's trustee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 256.]

In Equity. This was a suit by a trustee in bankruptcy to recover as a preference the amount of two notes of the bankrupt which were paid to defendant bank by his attorneys within four months prior to the bankruptcy and after the debtor had absconded. Three days before such payment, a petition in bankruptcy had been filed against the bankrupt by the "Middlesex Dry Goods Company," which was merely a business name adopted by an individual. The adjudication was made upon a petition subsequently filed by other creditors.

Julius Henry Cohen, for complainant.

Fleischman & Fox (Abraham Gruber, of counsel), for defendant.

HOUGH, District Judge. In my opinion the so-called petition in bankruptcy filed in the name of the Middlesex Dry Goods Company on June 29, 1903, was utterly void as a bankruptcy proceeding. It conferred no jurisdiction upon the court, but it did serve to call public attention to the actual or probable condition of Levin's affairs. It is admitted that on July 2, 1903, the defendant received, through its duly authorized attorney, a payment of $3,000, and the sole question here presented is whether such payment constituted a voidable preference within the meaning of section 60 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]).

Reading of testimony and briefs has served but to strengthen my opinion at the close of the hearing that all the elements of a voidable preference exist in this case. It is substantially conceded, and certainly proven, that on July 2, 1903, Levin was insolvent. It is equally clear that that date (i. e., the date of payment) was within four months of Levin's bankruptcy, without any reference whatever to the petition filed on June 29th. I am also quite clear that the payment in question was a transfer of Levin's property.

It is not denied that the effect of such admitted transfer or payment was to enable the Columbia Bank to obtain a greater percentage of its debt than any other creditor of the same class. It is also admitted that the Columbia Bank was the person benefited by such payment or transfer, and I am of opinion that at the time the $3,000 was received the bank had "reasonable cause to believe that it was thereby intended to give a preference."

The contest in this case has revolved around two only of the above-stated conclusions.

1. The defenses raised by the amended answer of the defendant really rests upon the assertion that what the bank received was not the money of Levin, but the money of two men in Indianapolis (Mantell and Medias), or (what is really the same thing) that Mantell and Medias, or one of them, having made an advance to Levin upon the security of certain property, that Levin paid the $3,000 out of the advance, and the plaintiff-trustee herein subsequently took the property from the pledgees, with the result that, should the plaintiff here recover from the bank (having already recovered from Mantell and Medias), it would be getting both the pledge and the proceeds thereof, and a double payment of the same claim.

The radical difficulty with this contention is that upon the evidence it is clear to me that there never was any advance or loan from either Mantell or Medias to Levin; that no moneys of Mantell or Medias were ever applied to the payment of the bank's debt, but, on the contrary, that Levin, Mantell, and Medias were conspirators, seeking to defraud the creditors of Levin, with the two latter persons acting but as a cover for the swindle all had engaged in. The trustee in bankruptcy was entitled to everything that he recovered from Mantell and Medias, and a great deal more, and the fact that he got the tangible property found in the conspirators' possession, months after bankruptcy, furnishes no ground for claiming that what they or any of them

(for reasons not apparent) chose to divert into a preferential payment should be withheld from the creditors whom he represents.

2. The meaning of the words "reasonable cause to believe" has been too often the subject of decision to require extended citation of authority. Knowledge is not necessary, nor even belief, but only reasonable cause to believe, which is a very different thing. Bank v. Cook, 95 U. S. 343, 24 L. Ed. 412.

Under previous statutes, that which the creditor might be said to have reasonable cause to believe was insolvency. Under this statute, it is the intent to give a preference, but such difference in statutory language does not affect the judicial interpretation of the phrase "reasonable cause to believe." In this case, the bank on the 2d of July knew that it had loaned Levin $1,000 on the security of an alleged open account against one Rothschild of Chicago, and that Rothschild had absolutely repudiated the account, for the very sufficient reason that he had not ordered the goods which were the subject of the account, and had not received and would not receive them. It knew that it had loaned Levin $2,000 more upon the security of a note for $3,000 indorsed by one Abrams as collateral not only for the $2,000 loan, but all other loans existing or to be created in favor of Levin. It knew that Levin's debt was not due and would not be due for a considerable time. It also was aware, as a rumor, if not as a fact, that Levin had "skipped," and it positively knew that his place of business was closed. It also knew that prior to July 2d two men, now identified as a brother and an employé of Levin, had attempted to pay a part of Levin's debt, and that this offer had been refused because the bank demanded payment of its entire debt at one time. These facts the bank knew by the knowledge of its cashier, who has very frankly and fairly testified to them, and such facts were sufficient to induce the cashier (the acting head of the bank) to place the entire matter, some short time before the payment of July 2d, in the hands of the bank's attorneys. These gentlemen, before they received payment of the $3,000 involved in this action, knew who were the New York attorneys of the man who had "skipped," and considering that knowledge, and the habits of gentlemen so skillful in commercial matters as they are, I think it a fair inference from the testimony that they also knew, as a part of their business for the bank, that an attempt had been made to put Levin in bankruptcy, and that a receiver for his property had been appointed by this court. With this accumulated knowledge, the bank's legal representatives were invited to receive money from the attorneys for the bankrupt, and they did so receive payment in full of Levin's entire indebtedness.

On this testimony, I cannot resist the inference that the known facts of July 2, 1903, constituted reasonable cause to believe that the payment of $3,000 was intended as a preference, and I regard these facts as so persuasive that they would have constituted such reasonable cause to persons far less astute and less accustomed to the ways of business in general and of bankruptcy in particular than were the cashier and counsel of the defendant bank.

A decree may pass for the complainant against the defendant for the sum of $3,000, with interest from July 2, 1903, and costs to be taxed.