### In re NEILL-PINCKNEY-MAXWELL CO.

#### (District Court, E. D. Pennsylvania. May 17, 1909.)

#### No. 3,001.

BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCES—GIVING SECURITY—PROOF OF INSOLVENCY.

    An assignment by a debtor corporation within four months prior to its bankruptcy of fire insurance policies under which there had been a loss to a creditor as security *held* not voidable as a preference because of the insufficiency of the evidence to show, with the clearness required, that the corporation was in fact insolvent when the assignment was made, or that, if so, the creditor had reasonable cause to believe it insolvent.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–258; Dec. Dig. § 166.*]

In Bankruptcy. On certificate of referee.

Maxwell H. Kratz and J. Howard Reber, for trustee.
Joseph H. Brinton, for C. S. Knowles.

J. B. McPHERSON, District Judge. The order made by the referee on March 26, 1909, dismissing the trustee's petition praying for the reassignment of certain policies of insurance, is affirmed for the reasons given by the learned referee (Theodore M. Etting, Esq.).

Referee's Certificate on Review.

To the Honorable the Judges of said Court:

    The question presented for review is whether under the evidence the referee erred in dismissing a petition filed by the trustee asking for an order on a

creditor to whom certain policies of fire insurance were assigned by the above-named bankrupt company, within four months of the bankruptcy, for the reassignment of the same. The material averments in the above petition are alleged insolvency at the time of the assignment, knowledge and reasonable cause of belief on the part of the assignee that a preference was intended. The assignee in his answer denies all of the above averments.

Upon the issue thus raised extended proof has been offered by both parties. I find the facts to be as follows:

The Neill–Pinckney–Maxwell Company is a corporation incorporated under the laws of West Virginia. On January 30, 1908, an involuntary petition in bankruptcy was filed against the company, and on February 15, 1908, the company was adjudged a bankrupt. Prior to bankruptcy the company conducted a wholesale electrical supply business at 925 Arch street in the city of Philadelphia.

C. S. Knowles, the assignee of the policies in dispute, is a Boston merchant, and was the largest creditor of the Neill–Pinckney–Maxwell Company at the time of its bankruptcy. During the entire summer of 1907 Knowles had endeavored to obtain a reduction of the indebtedness due him. The only amount which he succeeded in obtaining during that time was $500. At the time of the assignment the amount due Knowles was $10,958.98.

On September 15, 1907, Knowles, being dissatisfied with his inability to obtain money from the company and being doubtful about its financial standing, sent his credit man, Hardy, who had previously conducted the correspondence with the Neill–Pinckney–Maxwell Company, to Philadelphia for the purpose of ascertaining its financial condition and of endeavoring to obtain a payment if possible. Hardy did not succeed in getting any money, but he was given an opportunity of examining the company's books to ascertain the extent and value of its stock and resources. He made an estimate of the value of the merchandise on hand, bills receivable and fixtures, and ascertained the liabilities of the company. He found that the company had little or no money on hand, and that collections were difficult; but in this connection it must be remembered that the period was one of great depression in business and of consequent difficulty in collections.

Hardy's conclusion from the above examination was that the company was solvent, that its assets exceeded its liabilities by about $18,000, that it was carrying too much stock, and that its business was conducted at a place the rental of which was too high. These facts he mentioned at the time to Riffo, the president of the company, and reported the same to Knowles on his return to Boston. During August of 1907, in consequence of repeated dunning, the company gave Knowles notes in part payment of its indebtedness. The first of the above notes, which was for $1,500, fell due in the latter part of September. Shortly before the note fell due, Riffo wrote to Knowles that he would be unable to meet the note when due, and asked for an extension. This circumstance, together with the fact that a check given by the company to Knowles had not been met when deposited, led to the sending of Hardy again to Philadelphia.

Hardy arrived in Philadelphia on September 25, 1907, and went to 925 Arch street. Riffo was not in the store at the time. Hardy then saw that the stock of the company had been injured by fire which had occurred on September 22d, two or three days before he left Boston. Hardy knew nothing of the fire prior to his arrival in Philadelphia, but he came to Philadelphia for the purpose of taking hostile proceedings against the company, and apparently with the intent of asking for the appointment of a receiver. After leaving 925 Arch street, Hardy saw his counsel, A. J. Wilkinson, Esq.; he apparently then knew that there was outstanding insurance on the stock. After leaving Mr. Wilkinson, he had an interview with Riffo alone, and then proposed that Riffo should make an assignment of the policies in dispute. Riffo apparently was in some doubt as to the legality of so doing, and preferred, before committing himself, to consult his counsel. Hardy assured him that there was no doubt about the legality if the company was solvent. Riffo assured him of the company's solvency. At this interview, Hardy, in pressing his demand for the assignment, stated in substance to Riffo that he had come to Philadelphia for the purpose of applying for a receiver, but that the fire had been for the company a fortunate circumstance. The result of this interview was that

Hardy and Riffo proceeded to the office of Thomas D. Finletter, Esq., the general counsel of the company, Hardy being accompanied by A. J. Wilkinson, Esq., who, as before stated, had been previously retained in the case. Riffo assured Mr. Wilkinson that the company was solvent, and Mr. Finletter's advice was sought and obtained by Riffo. Mr. Finletter had no knowledge of the financial condition of the company, other than that which he possessed from statements furnished by Riffo. In answer to the inquiry as to whether the assignment in question could be made, Mr. Finletter advised Riffo that the assignment could be legally made if he so desired, inasmuch as it appeared from the statements which Riffo had furnished him that the company was solvent. The result of this interview, which, as before stated, took place on September 25th, was that it was there agreed that certain outstanding insurance policies which are the policies in dispute should be assigned to Knowles as collateral security for the payment of his debt. Mr. Wilkinson desired that the assignment should be made pursuant to a resolution passed by the board of directors of the company, and on September 27th a meeting of the board of directors was called and held, at which resolutions were adopted authorizing the assignment, and the assignment was executed on the same day.

Whilst these are not all the facts disclosed by the testimony, it is believed that they are the material and controlling facts.

To justify the order asked for, the burden of proof is on the trustee to show by sufficient evidence the following elements of voidable preference. He must show:

(1) That the bankrupt, whilst insolvent,

(2) within four months of bankruptcy,

(3) made the assignment in question.

(4) That Knowles had reasonable cause to believe that a preference was intended thereby.

(5) That the assignment enabled Knowles to obtain a greater percentage of his debt than other creditors of the same class.

The proofs presented are sufficient in my judgment to comply with all the requirements above referred to other than the first and fourth.

The question at issue is therefore narrowed to a consideration of the sufficiency of the proofs offered to sustain the requirements last above mentioned. In support of the proof of insolvency, the trustee has offered in evidence the schedules filed by the company after its bankruptcy. Taking the schedules as a starting point, the trustee has offered other evidence, chiefly that of Riffo, as proving that the company was insolvent at the date of the assignment, to wit, on September 27, 1907. The schedules in question were filed on February 19, 1908. Riffo, in his examination in chief, testified that after the fire he made a valuation of the company's assets and liabilities, and found that the company was insolvent on September 27, 1907, but on cross-examination it was impossible to obtain from Riffo any evidence as to the date on which the above estimate was made. He kept, he stated, a memorandum book which contained information which would enable him to supply this deficiency, but this book was never produced at the hearings, notwithstanding numerous endeavors made to obtain the same.

It further appears that after the fire Riffo began withdrawing money from the concern, the exact amount of which it is difficult to estimate. He certainly withdrew at least $7,000. These withdrawals, together with sacrifices of stock made to meet the demands of importunate creditors and the difficulties of collecting money on book accounts, were undoubtedly circumstances which had their influence in causing the bankruptcy of the company. Riffo's testimony when on the stand in the bankruptcy proceedings is undoubtedly at variance with the statements which he made to the counsel of the company, to Knowles, and to Hardy at the interviews above referred to preceding the assignment. It seems impossible to regard Riffo as a witness upon whose veracity much reliance can be placed.

As opposed to his testimony, there is the evidence of Hardy to the effect that, after unusual opportunity for observation and a valuation of the stock, the company was solvent on September 15th, which was seven days before the fire, and it does not appear from the evidence that the solvency of the company was affected by anything which occurred in the interval. The existing

depression was such that little or no business was done during this period. From testimony taken in the bankruptcy proceedings it appears that, so far as the stock and fixtures were concerned, Hardy's valuation was a fair one; his estimate of the value of the book accounts was too high, but there is a material difference between the value of the book accounts of a going concern and the valuation of the same accounts after bankruptcy, and at all events the margin of solvency, viz., $18,000, is sufficiently large to allow for considerable discrepancy in this regard without materially affecting Hardy's conclusion that the company was solvent on September 15th.

It follows that of course the company might have been solvent on September 15th and yet have been insolvent on September 27th. The fire undoubtedly had an influence on the company's business. It not only destroyed a portion of its assets, but knowledge of the fire made creditors of the company more insistent, but the uncontradicted evidence is that the property injured was fully covered by insurance and that the company at the time of the fire was carrying an excess of stock.

The proof offered by the trustee in support of insolvency is, in my judgment, far less cogent than that which was rejected in the recent case of Tumlin v. Bryan (C. C. A.) 21 Am. Bankr. Rep. 319, 165 Fed. 166.

After carefully considering the evidence adduced in support of and against the allegation of insolvency, the evidence produced by the trustee is, in my judgment, not sufficient to sustain the allegation of insolvency of the company at the time of the assignment.

If, however, I am in error in holding that the trustee has failed to furnish the requisite proof, then there remains the further question: Did Knowles know, or did he have reasonable cause to believe, that a preference was intended? Hardy denies that he had such knowledge, but if all things pointed to insolvency the belief of Knowles is immaterial. Neither knowledge nor actual belief are required to be shown. The rule is that all the surrounding circumstances are to be taken into consideration, and, if they are sufficient to lead an ordinarily prudent man to conclude that a preference was intended, the actual knowledge or belief of Knowles is immaterial. Sundheim v. Ridge Ave. Bk. (D. C.) 15 Am. Bankr. Rep. 132, 138 Fed. 951; In re Hines (D. C.) 16 Am. Bankr. Rep. 495, 144 Fed. 543.

The fire no doubt so far changed the previous condition as to put Knowles upon inquiry. He was not required to again examine the books of the company. He was only bound by such information as was open to observation and would yield to reasonable inquiry. In re Wolf Co. (D. C.) 21 Am. Bankr. Rep. 73, 164 Fed. 448.

Under all the circumstances of the case, considering the repeated assurance of Riffo, coupled with the fact that his representations of solvency were of such a character as to induce belief on the part of Mr. Finletter, the company's counsel, Hardy had, I think, a right to rely upon their accuracy. In this connection it should also be remembered that the assignment to Knowles was not an isolated transaction through which the company transferred to Knowles the residue of its resources. The truth seems to be that at the time the assignment was made the company apparently intended to continue business, and it was believed that it would pull through; but in order to satisfy the demands of the more importunate creditors, assignments of outstanding policies of insurance were made to several creditors in payment, whilst others took material at varying values. When a debtor pays and a creditor receives the amount of a just debt, the natural presumptions are in favor of good faith in the transaction. Merchants constantly continue to make payments up to the very eye of failure, and it would be disastrous to have them set aside on slight proof. In considering the proof offered, it is not easy to avoid giving undue consideration to the fact that within a few months after the assignment the company became bankrupt; but if this were sufficient to make a transaction voidable, uncertainty and uneasiness would probably attend all transactions between debtor and creditor, except when the debtor was admittedly solvent. In no two cases of this character are the facts precisely similar, but, in arriving at the conclusions above indicated, the recent case of Tumlin v. Bryan and In re Wolf Company, above referred to, as well as the case of Irish v. Citizens' Trust Co. of Utica (D. C.) 21 Am. Bankr. Rep. 39, 163 Fed. 880, may

be adverted to in connection with the thought which I have endeavored to express.

For the reasons heretofore stated, the petition praying for the reassignment of the policies is dismissed.