### GRANT v. NATIONAL BANK OF AUBURN.

### In re CAYUGA CONST. CO.

### (District Court, N. D. New York. April 12, 1916.)

1. STIPULATIONS ⚍18(8)—EFFECT—AUTHORITY OF COURT.

    Where, in an action by a trustee in bankruptcy to recover property on the ground that it was obtained by defendant as a preference, the parties stipulated that the case should be tried out before a referee of their own selection, and that, upon filing the report, judgment might be entered by the clerk in conformity therewith, the court adding the provision that judgment should not be entered until after 10 days' notice of

the filing of the report and of the proposed judgment, the court has no authority to review the findings of fact by the referee, the stipulation of the parties not so providing, and hence must uphold the judgment warranted by the conclusions of law, if they be justified by the findings of fact.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. § 52; Dec. Dig. ☞18(8).]

2. REFERENCE ☞99(4)—STIPULATIONS—POWER OF TRIAL COURT—TRIAL TO REFEREE.

Where, in an action to recover property on the ground that it was delivered as a preference, the parties, though there was no authority by statute, stipulated for trial to a referee, the trial court cannot review the referee's findings of fact, any more than an appellate court can review findings of fact in an action at law tried without a jury, where there is no statutory authority for the waiver of a jury and reservation of exceptions.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 153, 154; Dec. Dig. ☞99(4).]

3. REFERENCE ☞99(4)—RULES OF COURT—EFFECT.

A rule of court cannot confer jurisdiction on a District Court; therefore the District Court cannot, in an action by a trustee in bankruptcy to recover property on the ground that it was delivered as a preference, review under rule of court the findings of fact by the referee, where the parties stipulated for that mode of trial.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 153, 154; Dec. Dig. ☞99(4).]

4. BANKRUPTCY ☞162—"PREFERENCE"—WHAT CONSTITUTES.

Under Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562, as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (Comp. St. 1913, § 9644), declaring that a person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition, or after the filing of the petition and before adjudication, procured or suffered a judgment to be entered against himself in favor of any person, and the effect of the enforcement of such judgment will enable one of his creditors to obtain a greater per cent. of his debt than others, an insolvent corporation, which confessed judgment in favor of a bank two months before filing of a petition in bankruptcy against it, under which the bank was enabled to secure payment of its claim to the exclusion of other creditors of the same class, gave a "preference" which may be avoided.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 278–281; Dec. Dig. ☞162.

For other definitions, see Words and Phrases, First and Second Series, Preference.]

5. BANKRUPTCY ☞166(4)—PREFERENCE—INTENT.

Under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562, as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (Comp. St. 1913, § 9644), providing that if a bankrupt shall suffer judgment to be entered against him in favor of any person, and if at the time of entry of judgment, it being within four months of the filing of the petition in bankruptcy, or after the filing thereof and before adjudication, the bankrupt be insolvent, and the judgment then operate as a preference, and the person receiving it shall have reasonable cause to believe that enforcement would effect a preference, it shall be voidable by the trustee, the confession, within such time, of a judgment by an insolvent in favor of one of its creditors, whereby such creditor was enabled to obtain payment to the exclusion of other creditors, constitutes the receipt of a preference, regardless of any intent on the part of the insolvent or the creditor, where the creditor

has reasonable cause to believe that the enforcement of such judgment would effect a preference, though it had no actual knowledge to that effect.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250, 251; Dec. Dig. ☞166(4).]

6. BANKRUPTCY ☞304—PREFERENCE—FINDINGS OF FACT.

In an action to recover property seized under judgment by confession, on the ground that such judgment constituted a preference within Bankr. Act, § 60b, as amended in 1910, a finding of fact that at the time the judgment was rendered the creditor, which had urged the bankrupt to pay it to the exclusion of other creditors, had reasonable cause to believe that the enforcement of the judgment would have that effect, is sufficient to show that the confession of the judgment worked a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 463; Dec. Dig. ☞304.]

7. BANKRUPTCY ☞168—PROCEEDINGS—PREFERENCE.

Where, through the medium of confession of a judgment, a creditor received a preference, buying in the bankrupt's property on execution sale, the creditor, on the preference being set aside, is, under the direct provisions of Bankr. Act, § 60b, as amended in 1910, liable for the value of the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 234; Dec. Dig. ☞168.]

8. BANKRUPTCY ☞203—PREFERENCES—PURCHASE ON EXECUTION SALE—RECOVERY OF PROPERTY.

Bankr. Act, § 67c (Comp. St. 1910, § 9651), provides that any lien, obtained under a judgment by confession against a person within four months before the filing of a petition in bankruptcy by or against such person, shall be dissolved by the adjudication of such person as a bankrupt, if the lien was obtained while such person was insolvent, and its existence will work a preference, or the parties to be benefited had reasonable cause to believe such person was insolvent, or such lien was sought and permitted in fraud of the provisions of the act, but that nothing shall destroy or impair the title obtained by such levy, judgment, or lien of a bona fide purchaser who shall have acquired the property without notice or reasonable cause for inquiry. Within two months of the filing of the petition in bankruptcy against it, an insolvent corporation confessed judgment in favor of a bank. The bank bought in its property at execution sale, paying much less than the value of the property, and satisfying only two small judgments, which were prior liens; the debt due the bank being set off against the purchase price. *Held* that, as the transaction was a preference, the bank could not claim the property as a bona fide purchaser without notice.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞203.]

9. BANKRUPTCY ☞178(1)—PREFERENCES—"TRANSFER"—WHAT CONSTITUTES.

Bankr. Act, § 1 (25) (Comp. St. 1913, § 9585), declares that a transfer shall include a sale and every other different mode of disposing or parting with property. Section 67e provides that all conveyances, transfers, assignments, or incumbrances made or given by a person adjudged a bankrupt within four months prior to the filing of the petition, with intent to hinder, delay, or defraud his creditors, shall be void as against such creditors. *Held* that, in such case, as the transaction was intended to give the bank a preference over other creditors, it constituted a voidable transfer.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 264-266, 268-274; Dec. Dig. ☞178(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by J. Lewis Grant, as trustee in bankruptcy of the Cayuga Construction Company, against the National Bank of Auburn, tried by a referee on stipulation of parties. Application for an order vacating and setting aside report of referee, and for a new trial and an order directing judgment for defendant. Motion to set aside reports and findings, and for new trial, denied.

See, also, 197 Fed. 581.

This is an application to this court for an order vacating and setting aside the report of the referee herein, to whom this action was referred on stipulation of the parties to hear, try, and determine, and for a new trial and an order directing a judgment for the defendant. This court is asked to go behind the report and decision of the referee, and pass upon the correctness of rulings made on the trial, the sufficiency of the evidence to sustain the findings, and also the question whether or not the findings of fact are sufficient to sustain the conclusions of law and warrant the judgment for the plaintiff directed by the referee.

G. Earle Treat, of Auburn, N. Y. (Hull Greenfield, of Auburn, N. Y., of counsel), for plaintiff.

Chas. I. Avery, of Auburn, N. Y. (Frederic E. Storke, of Auburn, N. Y., of counsel), for defendant.

RAY, District Judge (after stating the facts as above). This action was brought to recover a preference received of the Cayuga Construction Company, and, being at issue, the parties voluntarily and without any suggestion from or direction of the court, entered into the following stipulation, referring the case to a referee selected by them, viz.:

"In the District Court of the United States for the Northern District of New York.

"J. Lewis Grant, as Trustee in Bankruptcy of Cayuga Construction Company, Plaintiff, against The National Bank of Auburn, Defendant.

"It is hereby stipulated that the above-entitled cause and the issues of law and of fact therein be referred to Walter E. Woodin, Esq., of Auburn, New York, counselor at law, as sole referee to hear, try, and determine, and that upon filing his report judgment may be entered by the clerk in conformity therewith, without further notice. Either party may enter an order to the foregoing effect without further notice.

"Dated September 30, 1912.                    G. Earle Treat,
                                                        "Attorney for Plaintiff.
                                              "Chas. I. Avery,
                                                        "Attorney for Defendant."

Thereupon this court on such stipulation entered the following order:

"At a stated term of the District Court of the United States for the Northern District of New York, held in the city of Auburn, New York, at the United States courthouse on the 1st day of October, 1912. Present: Hon. George W. Ray, Judge Presiding.

"In the District Court of the United States for the Northern District of New York.

"J. Lewis Grant, as Trustee in Bankruptcy of Cayuga Construction Company, Plaintiff, against The National Bank of Auburn, Defendant.

"The above-entitled action, presenting an issue of fact, having been placed on the calendar of causes for the above term, and the parties thereto having

by their attorneys filed a stipulation consenting that the issues therein be referred to Walter E. Woodin, Esq., counselor at law, of the city of Auburn, New York, to hear, try, and determine: Now, on motion of Charles I. Avery, Esq., it is hereby ordered that this cause and all the issues of law and fact therein are hereby referred to Walter E. Woodin, Esq., of Auburn, New York, as referee, to hear, try, and determine the same. Judgment shall not be entered until after ten days' notice of the filing of the report of the referee, and of the judgment proposed to be entered thereon.

"Geo. W. Ray, U. S. Judge."

The last clause of this order reading as follows:

"Judgment shall not be entered until after ten days' notice of the filing of the report of the referee, and of the judgment proposed to be entered thereon"

—was added by the judge signing the order and was not authorized by the terms of the stipulation. It was done by the court to safeguard the rights of the parties and enable the one defeated to see that the judgment was in accordance with the findings and directions of the referee. The case was then duly tried before the referee selected by the parties, and evidence taken, and thereupon such referee made his report, in which he finds:

I. That May 19, 1911, a petition in bankruptcy against the Cayuga Construction Company was filed; that June 6, 1911, adjudication followed; that July 19, 1911, the plaintiff here, J. Lewis Grant, was duly appointed trustee in bankruptcy of the estate and property of said bankrupt; and that he duly qualified and has since acted as such.

II. That April 13, 1911, less than two months prior to the filing of such petition in bankruptcy, the said Cayuga Construction Company confessed a judgment in the Supreme Court of the state of New York in favor of the National Bank of Auburn, N. Y., this defendant, for the sum of $4,756.86 on certain notes held by said bank and made by said Construction Company, and that on the 19th day of April, 1911, judgment was entered and docketed on said confession and pursuant thereto in Cayuga county clerk's office for the sum of $4,772.11, damages and costs, and that on the same day execution thereon was duly issued and delivered to the sheriff of said county, who levied, pursuant to direction of the defendant here, the plaintiff in such judgment and execution, upon all the personal property of said Cayuga Construction Company.

III. That at the time last mentioned the sheriff had two other executions against said Construction Company, issued on judgments for $58.39 in favor of Auburn Light, Heat & Power Company, and $169.44 in favor of Wood Glass Company, both entered and docketed April 14, 1911, within the four months preceding the filing of the petition in bankruptcy, and by virtue of which the said judgment creditors had issued executions, and levied upon and advertised for sale the property of said Construction Company.

IV. That the defendant here, the National Bank of Auburn, knew of such last-mentioned judgments and of such levy, etc., when it docketed its judgment and issued execution.

V. That on the 28th day of April, 1911, the sheriff of Cayuga county sold all of the personal property of said Cayuga Construction Company, with the exception of some book accounts of no value, on such three executions, to the said National Bank of Auburn, for the sum of $3,500, which bank paid him that sum therefor, and May 11, 1911, returned said smaller executions wholly satisfied, and the execution in favor of this defendant, said bank, satisfied as to $3,196.51 and unsatisfied as to the balance. The sheriff returned said sum of $3,196.51 to the bank to apply on the execution and judgment.

VI. That such property so levied on, and sold and purchased by the defendant bank, was reasonably worth $9,457.54.

VII. That all of such property was sold by the sheriff at the plant of the said Cayuga Construction Company, and remained there until sold and disposed of. The defendant, the National Bank of Auburn, after such sale,

employed one Byrnes, and he, with the president and secretary of said Construction Company, sold off and disposed of the lumber, working up some of it, and using the machinery for that purpose.

VIII. That at the time of the filing of the petition in bankruptcy, and at the time of the adjudication, and also at the time said judgment was confessed to the bank, and the levy and sale made by the said sheriff, all the property, real and personal, of said Cayuga Construction Company, was worth and of the value of only $13,712.54, of which $4,255 was real estate, $3,500 machinery, $5,731.79 unmanufactured lumber, and $225.75 interior furnishings in process of manufacture. The real estate was subject to a mortgage of $3,000 and interest thereon for six months. The said company was then owing, including said mortgage, $23,228.38; all of such indebtedness except that being unsecured. This includes $476.42 due for labor and taxes. Aside from such labor, taxes, and the mortgage, such claims were of the same class. At the time such judgment was confessed to the bank, and the levy and sale made, the said Cayuga Construction Company was largely insolvent.

IX. This Cayuga Construction Company was organized February 29, 1908, with an issued and paid-up stock of $2,600, all that was ever paid in, and the said defendant bank was then or soon thereafter informed that all of this stock had been acquired by John T. West, its president, George F. West, its secretary, Fred J. Wells, its treasurer, and Fred C. Almutt, a director; each owning at that time seven shares. In 1909 the said company purchased the real estate before mentioned for $5,800. This was all the real estate it ever owned, except a vacant lot used as a lumber yard. The company's business was the manufacture of interior woodwork for houses, etc. Soon after commencing business it commenced transacting its banking business with this defendant, the National Bank of Auburn, and up to February 11, 1909, had borrowed of it $1,500 on notes indorsed by said officers of the company. Under date of February 11, 1909, the company made a statement to the bank, giving its total resources as $6,800, and October 10, 1910, it gave to the bank a statement of its resources without new capital as $35,700, and its indebtedness as less than $4,500. March 5, 1911, about five months thereafter, it stated to the bank its resources as $25,000, without change of capital, a falling off or loss of over $10,000 in resources, and its debts and liabilities as $10,800, an increase in indebtedness in about six months of some $6,300. Of this indebtedness the bank then held $4,550 in notes of the company indorsed by the two Wests and by its attorney to the extent of $3,000. This attorney for the bank was the one with whom the officers of the bank consulted in arranging for said confession of judgment. These statements were in writing and held by the bank. The statement of March 5, 1911, was in response to a suggestion from Mr. Keeler, cashier of the bank, to the president of such company, Mr. West, that he, West, was becoming careless about his obligations, and Mr. West then informed Mr. Keeler that the company had been speculating in lumber and was owing the officers of the company considerable sums of money loaned to the company and for wages, all of which information was communicated to the president of the bank.

That on or about March 5, 1911, the time when this information was acquired, the defendant bank, through its said officers, began to negotiate with said company, through its president and its said attorney, for a confession of judgment by the company to the bank "for the purpose of obtaining an advantage over the other creditors of said company," and that "said bank had reasonable cause to believe when said confession was finally obtained that the said Construction Company was insolvent, and that the enforcement of said judgment would work a preference in favor of said bank (defendant here) over the other creditors of said bankrupt (company) of the same class, and enable said bank to obtain a greater percentage of its said debt than other creditors of said company of the same class."

The referee also finds:

"That the enforcement of said judgment as aforesaid did work the preference above mentioned, and did hinder, delay, and deprive the other creditors

of said bankrupt of their lawful shares in the property of said bankrupt, *and both parties to said judgment intended to bring about said results when said confession of judgment was made.*"

The referee also finds a demand was made of the bank by the trustee for a return of the property and and its proceeds, etc. The conclusions of law, somewhat mixed with findings of fact, are as follows:

"That said confessed judgment filed in Cayuga county clerk's office April 19, 1911, in favor of said defendant bank and against said Construction Company for $4,773.11, damages and costs, was void, because made while said company was insolvent, and at a time when the defendant had reasonable cause to believe plaintiff to be insolvent, and reasonable cause to believe that the enforcement of said judgment would work a preference in favor of said bank, and enable said bank to obtain a greater percentage of its debts against said Construction Company than other creditors of said company of the same class.

"II. That said confessed judgment and all proceedings thereunder was and are void, because said judgment and the sale was made and consented to by both the parties thereto with intent to hinder and delay the other creditors of said bankrupt, and with intent to deprive the other creditors of said bankrupt of their rights to share equally, as provided by the bankruptcy law of the United States, in the property of said bankrupt.

"III. That said confessed judgment was and is void, because it did hinder, delay, and deprive the creditors of said bankrupt of their rights in the property of said bankrupt and was so intended by the parties thereto.

"IV. That said confessed judgment is void, because made, entered, and enforced against the property of said bankrupt within four months prior to its adjudication in bankruptcy, and while said company was insolvent.

"V. That the plaintiff and trustee in bankruptcy of the Cayuga Construction Company is entitled to recover of the National Bank of Auburn, defendant, the sum of $9,154.05, being the value of the property taken from said company under said confessed judgment and sale, with interest thereon since July 26, 1911, less the sum of $303.49 retained by the sheriff as aforesaid; such interest amounting at the date of this report to the sum of $1,-727.05, the total amount to be recovered by the plaintiff against the defendant being the sum of $10,881.10, for which sum judgment is hereby directed to be entered, with the costs of this action."

It would seem clear that the facts found justify the conclusions of law, or some of them, and sufficient of them to authorize and justify the judgment directed for $10,881.10, including $1,727.05 interest, and being the value of the property taken by the bank less the $303.49 retained by the sheriff and paid on the small judgments and executions.

[1] The trial and determination of the issues involved in the pleadings were voluntarily taken from the court by the act and stipulation of the parties themselves. They stipulated and agreed that the case should be tried by and before Mr. Woodin, as referee, they selecting and naming him, and that he should hear, try, and determine same; and more, the parties stipulated and agreed that "upon filing his report judgment may be entered by the clerk in conformity therewith without further notice," and also that "either party may enter an order to the foregoing effect without further notice." This reserved nothing for the court, but eliminated it entirely, and made little, if anything, more than an arbitration of it. This stipulation cannot be disregarded or varied. It was the solemn deliberate act of the parties. It was the authority for all that was done; the court having sanctioned that disposition of the case. Nothing was reserved to the court or for the

court. The only restriction on this stipulation imposed by the court was that:

"Judgment shall not be entered until after ten days' notice of the filing of the report of the referee, and of the judgment proposed to be entered."

But for this provision imposed by the court, the successful party, on the filing of the report, could have entered his judgment and issued execution before the other party was aware of what the decision of the referee was. I do not see that this court has any power or right to examine the evidence, or the correctness of the rulings of the referee in the admission or rejection of evidence, or in refusing requests to find facts, or in making findings of fact. If conclusions of law sufficient to support the judgment directed are supported and justified by the findings of fact, then judgment as directed may and must be entered on the stipulation and findings of fact and conclusions of law and pursuant thereto. David Lupton Sons v. Auto Club of America, 225 U. S. 489, 494, 495, 32 Sup. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 599, and cases there cited.

[2] The reasons are twofold: First, the parties have stipulated that a referee named by themselves should hear, try and *determine* the case and that judgment be entered on his decision; second, there is no law of Congress authorizing such a reference, or preserving to, or in, or conferring on, the court any power to review the findings of fact made by the referee, when such a reference is agreed upon by the parties or to review his rulings on the admission or rejection of evidence. For this reason the court itself originally had only the common-law powers in such cases, and could exercise no other unless expressly reserved to the court by the stipulation, if indeed such reservation could have been made, inasmuch as judicial power cannot be conferred by stipulation or agreement of the parties. "Where the parties *agree* that the *court* shall decide questions both of law and fact, none of the questions decided, either of fact or law, can be reviewed by this court (the Supreme Court) on a writ of error." Campbell v. Boyreau, 21 How. 223, 225, 226, 16 L. Ed. 96. In so deciding, and the case has been steadily followed since the decision was rendered, the court after stating that, in the absence of statutory authority of Congress, the courts of the United States, so far as questions of law are concerned, are regulated in their modes of proceeding according to the rules and principles of the common law, said:

"The finding of issues of fact by the court upon the evidence is altogether unknown to a common-law court, and *cannot be recognized as a judicial act.* Such questions are exclusively within the province of the jury; and if, by agreement of parties, the questions of fact in dispute are submitted for decision to the judge upon the evidence, *he does not exercise judicial authority in deciding, but acts rather in the character of arbitrator.* And this court, therefore, cannot regard the facts so found as judicially determined in the court below, nor examine the questions of law as if these facts had been conclusively determined by a jury or settled by the admission of the parties. Nor can any exception be taken to an opinion of the court upon the admission or rejection of testimony, or upon any other question of law which may grow out of the evidence, unless a jury was actually impaneled and the exception reserved while they were still at the bar. The statute which gives the exception in a trial at common law gives it only in such cases."

Later statutory provision was made whereby the parties may *in writing waive a trial by jury* and try the case before *the court* itself, and when *this is done* the case may be reviewed on exceptions taken in the usual manner. But no provision by law has been made for referring by stipulation of the parties an action at law to a referee selected by the parties to hear, *try, and determine,* especially when it is also stipulated that judgment is to be entered on the decision of such referee. Hence such a reference takes on the character of *an arbitration,* or of a mere trial before the judge as arbitrator, *in the absence of a written stipulation waiving a jury trial and consenting to a trial before the court without a jury.* The result is that this court is without power to examine the evidence in this case, to ascertain whether it is sufficient to sustain the findings of fact, or to review the rulings on the admission or rejection of evidence, or the refusal of the referee to find certain facts as requested or to grant a new trial.

This is now established by a long line of authority. In New York & Cumberland R. R. Co. v. Myers, 18 How. 246, 250, 253, 15 L. Ed. 380, the parties before trial, as here, agreed upon a reference, and the court held:

"This conclusion of his (the referee) is a *final* decision on the question, for this court cannot revise his mistakes, either of law or of fact, if such had been established. Burchell v. Marsh, 17 How. 344 [15 L. Ed. 96]; Kleine v. Catara, 2 Gall. 61 [Fed. Cas. No. 7,869]."

In Bond v. Dustin, 112 U. S. 604, 5 Sup. Ct. 296, 28 L. Ed. 835, the question was up again, and Mr. Justice Gray went more or less into the common-law doctrine and the change or modification made by Act March 3, 1865, c. 86, § 4, and carried into the Revised Statutes of the United States (13 Stat. 501; Rev. St. §§ 649, 700; 1 U. S. Comp. St. 1913, § 1587), and quoted from Campbell v. Boyreau, supra, and which statute provides for the *waiver in writing* of a trial by jury, and there said:

"Since the passage of this statute it is *equally well settled* by a series of decisions that this court cannot consider the correctness of rulings at the trial of an action by the Circuit Court without a jury, *unless the record shows such a waiver of a jury as the statute requires, by stipulation in writing, signed by the parties or their attorneys,* and filed with the clerk" (citing the cases).

The learned justice then says:

"The only evidence of a waiver of a jury is the statement in the record that when the case came on for trial the issue joined by consent is tried by the court, a jury being waived," and in the recital at the beginning of the bill of exceptions, "The above cause coming on for trial by agreement of parties was tried by the court, without the intervention of a jury."

The court then held this insufficient to comply with the statute providing for the waiver of a trial by jury *in writing* and said:

"The necessary conclusion is that this court has no authority to consider the exceptions to the admission of evidence at the trial."

The statute referred to reads as follows:

"Sec. 1587. (R. S. § 649.) *Trial of Issues of Fact by the Court.* Issues of fact in civil cases in any Circuit Court may be tried and determined by

the court, without the intervention of a jury, whenever the parties, or their attorneys of record, file with the clerk a stipulation in writing waiving a jury. The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury."

By section 700, R. S. U. S. (section 1668, 1 Comp. St. U. S. 1913), the Supreme Court may consider the exceptions when the reference has been made as provided by section 1587, supra. The latest case of which I am aware is David Lupton Sons v. Auto Club of America, 225 U. S. 480, 494, 495, 32 Sup. Ct. 711, 712 [56 L. Ed. 1177, Ann. Cas. 1914A, 699], where Mr. Justice Hughes, in giving the opinion of the court, says:

> *Upon written stipulation the action was referred to a referee to hear and determine the issues.* The referee reported his findings of fact and conclusions of law, holding that the contract was void under the statute and that the complaint should be dismissed. * * * As the trial was had before the referee pursuant to the stipulation, the only question presented here is whether there is any error of law in the judgment rendered by the court upon the facts found by the referee. The *findings of fact are conclusive in this court.* We cannot review any of the exceptions to those findings or to the refusal of the referee to find facts as requested"—citing several cases.

When we consider the foundation for and reason of this rule and line of decisions, we see that when a stipulation is made by the parties, or their attorneys, agreeing upon a referee and submitting the case to him to "hear, try, and determine," and especially when the stipulation provides for the entry of judgment accordingly on his report, the court itself has nothing to do, no judicial power in the premises, except to see that judgment is entered according to the findings and the directions made by such referee. The District Court has no greater judicial power than the Supreme Court of the United States, or the Circuit Court of Appeals, and cannot review or correct errors of such referee, if any, in the admission or rejection of evidence, his holding as to the sufficiency of the evidence to sustain the findings, or his refusals to find as requested. This court can only look to the pleadings to see if the findings are within the issues framed and to the facts found, to ascertain whether the facts found sustain the conclusions of law, or sufficient of them to sustain the judgment directed and entered. Such a trial before a referee is little more than an arbitration, as has been more than once decided in this, the Second circuit, and other circuits. Steel et al. v. Lord, 93 Fed. 728, 35 C. C. A. 555; Parker et al. v. Ogdensburg & L. C. R. Co., 79 Fed. 817, 25 C. C. A. 205; Chicago, M. & St. P. R. Co. v. Clark, 92 Fed. 968, 35 C. C. A. 120; Hudson River Pulp & Paper Co. v. H. H. Warner & Co., 99 Fed. 187, 39 C. C. A. 452; J. G. White & Co. v. Ball Eng. Co., 223 Fed. 618, 139 C. C. A. 286; Edenborn v. Sim, 206 Fed. 275, 124 C. C. A. 339. In J. G. White & Co. v. Ball Eng. Co., supra, the Circuit Court of Appeals in this, the Second, circuit, said:

> "The trial was before a referee, called in Connecticut a 'committee,' and therefore the only question before us for consideration is whether his findings of fact sustain the judgment. We can look only at the pleadings, order of reference, findings of fact, conclusions of law, and judgment of the court. We cannot consider the testimony, the exhibits (except so far as included in the findings of fact), or the refusals of the committee to find."

As seen, the powers of the District Court in these respects are no broader or greater then are those of the Circuit Court of Appeals or Supreme Court. See, also, Alder v. Edenborn (D. C.) 198 Fed. 930, and Del. L. & W. R. Co. v. Caboni, 223 Fed. 631, 139 C. C. A. 177. It was not an agreement or stipulation to take the evidence out of court, and then submit it with recommended findings of fact to the court, a jury trial being waived by written stipulation, for its review and decision, but a transfer of the case to the referee for trial before and by him, and for his decision, and for a judgment thereon.

[3] The learned counsel for the defendant urges old rule 22 (Blatchford's Rules [Ed. 1884] 622), but it requires no argument to show that a rule of court cannot confer judicial power on a District Court, or any other court, unless such rule is expressly authorized by some law of Congress, and there is no such statute. This court has no power to set aside or disregard the findings of fact of the referee, or disregard his conclusions of law, if authorized by the facts found, or to grant a new trial, or to disregard or modify the stipulation of the parties. The appointment of arbitrators or referees at common law, and common-law arbitrators, were well known; but such arbitrators neither possessed nor exercised judicial powers, and were not even required to report and return the facts found. See Hecker v. Fowler, 2 Wall. 123, 17 L. Ed. 759.

[4] By section 60a of the Bankruptcy Act a person, and this includes a corporation, is deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition in bankruptcy, either procured or suffered a judgment to be entered against himself in favor of any person, and the effect of the enforcement of such judgment will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. This Construction Company was heavily insolvent, and knew it, and not only suffered, but procured, this large judgment to be procured and entered against itself. The effect of the enforcement of the judgment would be, as it well knew, to give to the bank substantially everything it owned, and a greater percentage of its claim than any other creditor of the same class. It is clear, therefore, that the Cayuga Construction Company gave a preference to each of the judgment creditors named.

[5,6] By section 60b of the same act it is provided that, if a bankrupt shall have suffered a judgment to be entered against him in favor of any person, and if at the time of the entry of the judgment, it being within four months before the filing of the petition in bankruptcy, the bankrupt be insolvent, and the judgment then operate as a preference, and the person, including a bank, shall then *have reasonable cause to believe* that the enforcement of such judgment would effect a preference, such judgment is voidable by the trustee and he may recover the property *or its value* from the person or bank receiving the preference. That these judgments and the sales thereunder, and the transfer of the property to the bank by a sale thereunder, operated as a preference, cannot be questioned. The referee has found on the evidence given and produced before him that the bank *did have*

*reasonable cause to believe* that the enforcement of the judgment would effect a preference. · The referee finds, not only that the bank knew of large indebtedness to other persons and of the two other judgments, but that the bank by its officers consulted as to steps and means to obtain the property of its debtor in preference to other creditors. The bank, by issuing execution, and selling, or causing to be sold, and purchasing this property, perfected the payment to itself of a preference. This court cannot, and no appellate court in the face of the stipulation can, go behind that finding of the referee, and examine the evidence, to ascertain and determine whether such evidence sustains this finding of fact. That is not within the power of this court, or of any appellate court.

Since the amendment to the bankruptcy law of 1910, if the bank knew, or had reasonable cause to believe, that its debt would be satisfied in whole or in part by the confession of the judgment, and its filing and docket, and the issuing of an execution thereon, and a levy and sale thereunder of all the personal property of the Cayuga Construction Company, to the exclusion of other creditors of such company of the same class, it constituted the receipt of a preference regardless of any *intent* on the part of the company or of the bank, and the trustee may recover the property received under and through such sale, *or its value.* To establish reasonable cause to believe it is not necessary to prove either *actual knowledge or actual belief,* but such circumstances and conditions, within the knowledge of the party receiving the preference, as naturally would lead a man of ordinary prudence and intelligence, had he been the creditor receiving the preference, to arrive at the conclusion that the judgment, levy, and sale would result in a preference, and the creditor must have such knowledge of facts and circumstances as would reasonably induce the belief that his debtor was insolvent. Aronin v. Security Bank of New York, 228 Fed. 888, 890, —— C. C. A. ——, where the Circuit Court of Appeals said that reasonable cause to believe is shown when it appears that:

"The bank received the accounts under such circumstances as naturally would have caused an ordinary person, * * * receiving the preference to have believed that thereby a preference would be effected."

See also to the same precise effect Pratt v. Columbia Bank (D. C.) 157 Fed. 137, 18 Am. Bankr. R. 406, 415; In re Neill-Pinckney-Maxwell Co. (D. C.) 170 Fed. 481, 22 Am. Bankr. R. 401.

It is sufficient if the facts brought to the knowledge of the person to be affected are such as would produce action and inquiry on the part of an ordinarily intelligent man (Grant v. Bank, 97 U. S. 80, 24 L. Ed. 971), or a prudent business man (Bank v. Cook, 95 U. S. 343, 24 L. Ed. 412; Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481), or a person of ordinary prudence and discretion (Wager v. Hall, 16 Wall. 584, 21 L. Ed. 504). Facts which would put an intelligent business man upon inquiry constitute reasonable cause to believe, if purpose or intent to prefer would be discovered by making and following up the inquiry. Stern v. Paper (D. C.) 183 Fed. 228, 25 Am. Bankr. R. 451; Tilt v. Citizens' Trust Co. (D. C.) 191 Fed. 441, 27 Am. Bankr.

R. 320. In this case the defendant was not only put on inquiry, but made inquiry, and as a result' secured the judgment by confession speedily and made a speedy sale thereunder.

On the question of preference, therefore, the inquiry is: Do the findings of fact make out the necessary "reasonable cause to believe" on the part of the defendant, the National Bank of Auburn? The finding of fact is that the bank did have at the time mentioned such reasonable cause to believe that the enforcement of the judgment would effect a preference. I think this is a sufficient finding. The findings of fact are not to embrace a statement of the evidence, or of all the minor facts proved which together establish the main fact. The fact necessary to be established by evidence was that the National Bank of Auburn, at the time it received or obtained and filed this confession of judgment, docketed same, and issued execution thereon, and sold the property thereunder, or had it sold, and took possession of such property, then had reasonable cause to believe that such enforcement of such judgment and transfer of property to itself would effect a preference; that is, enable the bank to obtain a greater percentage of its debt than any other of such creditors of the same class. Proof or establishment of this fact was necessarily made up of proof of many facts and circumstances established to the satisfaction of the referee, such as proof of insolvency, the existence of other creditors, and actual knowledge on the part of the bank, or knowledge of such facts and circumstances as gave it knowledge of such facts as satisfied the referee that the bank had, or was chargeable with, the knowledge of conditions required by the law. It must be assumed that the evidence was sufficient to sustain and warrant this finding of fact.

[7] It is claimed by the defendant that the bank cannot be charged with more than the sum bid and paid for the property on the execution sale made by the sheriff, in the absence of proof that the sale was a sham or unfairly conducted. But the law says that the trustee in bankruptcy may recover from the one who has received the preference either the property or *its value*. The language is:

"It [the preference] shall be voidable by the trustee and he may recover the property [received] or its value from such person."

Here the property was seized by the sheriff under this defendant's execution and sold, and the defendant bank bid it in and took possession and disposed of it, and on demand *refused* to give it up, or its proceeds. The trustee gave to the bank an opportunity to surrender the property, which it did not do. When property is fairly and openly sold at public sale on due notice, the amount for which sold is some evidence of its value, but not final, conclusive, or determinative of that question of value. When this property was levied on and sold by the sheriff under this execution (and the two smaller ones) there was no trustee; the Construction Company was insolvent and had confessed the judgment, and there is neither proof nor pretense that the general creditors had any information as to the judgment or sale. Therefore the price for which this property sold on the execution sale is not determinative of its value. The referee found its value as above

stated, and the assumption is that this finding was based on evidence, and, as seen, this court cannot go behind that finding.

[8] Inasmuch as the findings of the referee as to a preference fully support the conclusions of law. based thereon and support the judgment directed, it is not necessary for this court to consider or pass upon the question of actual fraud, etc., under other sections and provisions of the Bankruptcy Act, and the sufficiency of the findings of fact to sustain the conclusions of law on that subject. The facts found present a case where the creditor, the defendant bank, having reasonable cause to believe that its debtor, the Cayuga Construction Company, was insolvent and unable to pay its unsecured creditors in full, and intending and designing to .obtain payment of its claim in full through a confession of judgment in its favor, issue of execution, and levy and sale of the property of such debtor, and payment of its judgment and debt thereby in preference to such other creditors of the same class, negotiated with its debtor to secure from it such a confession of judgment in its favor, intending to file and docket such judgment, issue execution thereon, levy on the property of the debtor, and sell same, and either purchase the property or receive the proceeds of such sale to apply on its debt, to the exclusion of the other creditors of said Construction Company, and to obtain an advantage over them and secure its. payment in full before they should receive anything. These negotiations were actually had, and both the debtor and the creditor agreed upon such course of procedure for the purpose indicated and stated, and both had the intent and object stated and indicated. Pursuant thereto, and in execution of such arrangement, the judgment was confessed by the debtor, the confession was received and filed by the creditor, and judgment docketed. Then, in pursuance and in execution of the same purpose, execution was issued and placed in the hands of the sheriff, and the creditor directed a levy and sale. The levy and sale were made; the creditor became the purchaser, received the property, and paid over the purchase price to the sheriff, and then received same back to apply on its debt against the Construction Company, less the amount necessary to pay the two prior judgments, amounting to about $300, all of which was done in execution of the said purpose and understanding.

The intent and purpose of both parties was to hinder and delay the other creditors and "deprive" them of their share in such property on the basis of an equal distribution to creditors of the same class in the case of actual insolvency, and which equal distribution in such cases is the policy and purpose of the Bankruptcy Act. If this was not a fraud upon the act, it is hard to conceive what would be. If a trustee in bankruptcy cannot recover in such a case, it is difficult to conceive of a case where a trustee in bankruptcy may recover. If the trustee in bankruptcy may not recover from the creditor, who became the purchaser and who parted with no new consideration, the proceeds of such a sale of the insolvent debtor's property, why should he recover the property by use of injunction to stay the sale before actual sale? In one view a preference has been effected, and the property or its value may be recovered. In the other view, a fraud on the

Bankruptcy Act has been consummated, and the proceeds may be re-covered from the party thereto having same in his or its possession.

The referee has found that at the time of the confession of judg-ment to the bank the Construction Company was indebted to various persons, including the defendant, in the sum of $23,228.38, all unse-cured except $3,000 and interest, which was secured by a mort-gage on the real estate of the company. He has also found that the total value of all the property of the Construction Company was $13,-712.54. In addition to these figures found by him, the referee finds:

"That at the time of said confession of judgment to defendant bank, and at the time of its entry and enforcement as aforesaid [referring to the sale and purchase by the bank], the said Cayuga Construction Company was in-solvent."

The referee has found that certain written statements were made to the bank, one of which, just before the confession of judgment, showed a large falling off in assets and a large increase in liabilities, and that information was given the bank that the company had been speculating in lumber and was owing its officers considerable sums of money loaned to the company and also wages, and also that the bank knew that the president of the company was getting careless about its obligations, etc. The referee has also found that about March 5, 1911, the defendant bank, through its said officers, began to negotiate with said bankrupt (the company), through its said president and Mr. Whelan, for a confession of judgment by the bankrupt to the defend-ant bank, for the purpose of obtaining an advantage over the other creditors of said bankrupt, and that the bank then had reasonable cause to believe, when the confession was obtained, that the Construction Company was insolvent, and that the enforcement of the judgment confessed would work a preference in favor of the bank over the other creditors of the said bankrupt of the same class, and enable the said bank to obtain a greater percentage of its debt than other creditors of the company of the same class. The referee also finds that:

"The enforcement of said judgment as aforesaid did work the preference above mentioned, and did hinder, delay, and deprive the other creditors of said bankrupt of their lawful shares in the property of said bankrupt, and both parties to said judgment [referring to the judgment confessed to the bank] intended to bring about said results when said confession of judgment was made."

All this was within the four months period. As matter of law the referee finds:

"That said confessed judgment was and is void, because it did hinder, de-lay, and deprive the creditors of said bankrupt of their rights in the prop-erty of said bankrupt, and was so intended by the parties thereto."

This judgment confessed by the company to the bank was almost im-mediately filed, and judgment docketed pursuant thereto, and execu-tion thereon was placed in the hands of the sheriff, and the property was sold and bid in and taken possession of by the bankrupt. By is-suing the execution and making the levy the bank within the four months period secured a lien on the personal property, and through it took the property and appropriated the proceeds of the sale thereof

to its own use and in payment of its own debt, so far as it would go; the sheriff applying a small portion to the payment of the two small judgments referred to. By section 67e of the Bankruptcy Act it is provided that:

"A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this act."

The same section provides:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless," etc.

It is also provided in the same section as follows:

"That nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

There can be no pretense here that the defendant bank was a bona fide purchaser for value, who acquired the property without notice or reasonable cause for inquiry. The defendant bank purchased this property at the execution sale and took possession of it. It was purchased under a sale made by virtue of the two smaller judgments and this large judgment. There was no necessity for selling but a small part of the lumber to satisfy the two smaller judgments. The sheriff was acting under the directions of the bank, and under the facts found it cannot be doubted that the bank intended, by obtaining the judgment, issuing the execution, procuring the sale, and purchasing the property, to hinder and delay the other creditors of the company, and prevent the other creditors from obtaining any part of the property or its proceeds. It cannot be doubted that the defendant bank also intended to deprive the other unsecured creditors of any remedy against the property, and to secure the property for itself before bankruptcy proceedings could be instituted.

In Clarke v. Larremore, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555, judgment was obtained within the four months period, execution issued, levy and a sale thereunder made, but the sheriff, before paying the money over to the judgment creditor, was enjoined in a state court by another creditor from paying the money over. Immediately thereafter the state court vacated the injunction, but while the money was still in the hands of the sheriff, and before the time to return the exe-

cution had expired, a petition in bankruptcy was filed against the judg- ment debtor. It was held that the money accruing from the sale un- der the execution and levy did not belong to the judgment creditor, but went under section 67f of the Bankruptcy Act to the trustee in bankruptcy. The court said:

"A different question might have arisen if the writ had been fully executed by payment to the execution creditor. Whether the bankruptcy proceedings would then so far affect the judgment and execution and that which was done under them as to justify a recovery by the trustee in bankruptcy from the execution creditor, is a question not before us, and may depend on many oth- er considerations."

Here, as seen, the money was paid over to the bank by the sheriff before the institution of bankruptcy proceedings.

In Re Resnek et al. (D. C.) 167 Fed. 574, it was held that where, within four months before the filing of a petition in bankruptcy against an insolvent debtor, an execution has been issued, and a levy and sale made, and the proceeds paid over to the judgment creditor before the filing of the petition in bankruptcy, the case does not fall within the provisions of section 67f of the Bankruptcy Act, and the lien created by the judgment and levy is not rendered void by the adjudication. The court said:

"The remedy, if any, the trustee has against the creditor, is under the provisions of section 60a and 60b of the Bankrupt Act in a plenary action, where it will be necessary to allege and show that the creditor had reason- able cause to believe that the bankrupt, by suffering judgment to be taken against him, intended to give a preference."

The court cited In re Blair (D. C.) 102 Fed. 987; In re Bailey (D. C.) 144 Fed. 214; In re Knickerbocker (D. C.) 121 Fed. 1004.

[9] Section 1(25) provides:

"Transfer shall include the sale and every other and different mode of dis- posing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift or security."

Section 67e of the Bankruptcy Act provides:

"That all conveyances, transfers, assignments, or incumbrances of his prop- erty, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all prop- erty of the debtor conveyed, transferred, assigned, or encumbered as afore- said shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors."

It may be that a mere confession of judgment, followed by judg- ment entered, execution issued, levy, and sale, is not to be regarded as a conveyance within this section; but when the insolvent debtor and the creditor (bankrupt) *agree,* for the purpose of securing an advan- tage to this one creditor over other creditors, on *this mode* of disposing

of the property, and the judgment is confessed, and the execution is issued, and levy and sale made, and the creditor becomes the purchaser and holds the property, first paying the sum bid and then receiving it back from the sheriff on his debt, and the intent of both was to transfer the property or its proceeds to the said creditor to the exclusion of others, what is the transaction but a "transfer" as defined in section 1, to the creditor? It is but a mode adopted by the parties of disposing of the property of the debtor in payment to his creditor. Here that is exactly what was accomplished. It will be noted that all through section 67 the language is "hinder, delay *or* defraud," *not* "hinder, delay *and* defraud." I am of opinion that this sale of this property of the Construction Company under the execution and levy all of which was within the understanding between the bank and such company, and all of which was done to hinder and delay the other creditors of the company and deprive them of a share in the proceeds of the property, and which sale *transferred the property to the bank* and resulted in a payment of the proceeds to it on its pre-existing debt, was a "transfer" within the meaning of section 67e, and, the property having been demanded of the bank, the trustee may recover its value on that ground. I am aware that it is not necessary to so hold in this case, as under the facts found by the referee there was clearly a preference, which the trustee may recover, and the plaintiff is entitled to the judgment directed by the referee.

I find no irregularities in the mode of procedure, and the motion to set aside the report and findings and for a new trial is denied.

There will be an order accordingly.